## 58288. PITTS v. THE STATE.

BIRDSONG, Judge.
The appellant Pitts was found not guilty of robbery and aggravated assault by reason of insanity. Thereafter;

in accordance with Code Ann. § 27-1503 he was committed to the Central State Hospital. After more than 30 days of hospitalization, an application for release on his behalf was filed by the hospital authority. A hearing was held but release was denied. Pitts filed this appeal from the order denying him release. *Held:*

Pitts enumerates four alleged errors. Each a-mounts to a bare conclusion by Pitts based upon the findings and order of the trial court following the hearing on the request for release. These enumerations allege that the trial court did not require the state to prove that Pitts meets the criteria for civil commitment; that the court erred in applying a presumption of continuing incompetency simply because Pitts had been found not guilty by reason of insanity; that the court improperly shifted the burden of showing competency to appellant; and, that the evidence did not support the court's determination that Pitts met the criteria for civil commitment. There was not the slightest predicate in the order of the trial court that could give rise to any complaint that the trial court had obviated the burden of the state, shifted the burden to the appellant, or given any reliance to a continuing presumption of insanity.

The history of this case shows that the judge refusing release was also the trial judge in the trial of the robbery and aggravated assault offenses. Because of a serious doubt as to mental competency or responsibility prior to trial, the court caused Pitts to be psychiatrically examined. In summary the psychiatric report to the court indicated that Pitts suffered from a significant psychiatric illness best categorized as schizophrenia. The report stated that Pitts had a record of psychiatric hospitalization at Central State Hospital in 1971, 1972, 1974, and 1975; at Atlanta Regional Hospital in 1974; and in Grady Memorial in 1977. Pitts himself apparently informed the examining physician that the vast majority of these periods of hospitalization followed overt suicide attempts. At the time of the examination in 1977, Pitts revealed an unkept appearance, inappropriate action, grimaces facies, anxious mood, extremely flat effect, moderately loose associations, evidence of visual hallucinations of a command nature telling Pitts to hurt

himself or kill himself, evidence of suicidal ideations and evidence of persecutory delusions. At that time Pitts was experiencing psychotic decompensation in spite of medication. It was recommended that Pitts be transferred to Central State Hospital. Based upon this recommendation, the trial court ordered Pitts' transfer to Central State.

After his transfer, Pitts denied any suicidal ideation or delusional ideas. The doctor at Central State concluded that while Pitts had a history of emotional problems over the past several years, including hospitalization, he considered Pitts mentally competent to stand trial.

Upon Pitts' return for trial, the trial court still entertained doubts as to Pitts' competency and ordered yet another examination. Grady Memorial Hospital, in addition to its earlier observations of Pitts' mental condition, then observed that Pitts had a long history of psychiatric illness, first being diagnosed as schizophrenic at age 17. Its second report also stated that over the years Pitts had been a difficult management problem refusing treatment and medications and at times of decompensation of his illness. Pitts had suffered several episodes of violent and impulsive behavior. The hospital's senior resident psychiatrist concluded that while Pitts was competent to stand trial, in view of his past history of violent and aggressive behavior when out of treatment and off medication, that Pitts be placed in a long-term highly structured environment for management and stabilization. After this final examination, Pitts was tried for robbery and aggravated assault. The trial court entered findings of not guilty by reason of insanity. Pitts was then committed to Central State Hospital in accordance with the provisions of Code Ann. § 27-1503. Approximately nine months later the hospital authority requested the hearing under Code Chapter 88-5 stating as the reason that in the opinion of the resident doctors, Pitts then did not meet the criteria for civil commitment.

The only additional evidence presented at the hearing requested by the Central State Hospital was evidence presented on behalf of Pitts by the treating physician during the last commitment to Central State Hospital. In the opinion of that physician, Pitts was not

mentally ill because during the nine-month stay, Pitts had not been psychotic, nor acted in any way to indicate an active illness. The doctor testified that Pitts had not manifested any dangerous activity, had not engaged in any acts of aggression or violence. In the doctor's opinion, Pitts did not meet the civil commitment criteria of Chapter 88-5 or 88-25 of the Georgia Code. Finally, the doctor testified that Pitts would not benefit from further hospitalization and that Pitts did not need mandatory out-patient treatment. The state did not present additional documentary or real evidence at the hearing.

Following the hearing the trial court concluded that notwithstanding the testimony of the attending physician from Central State Hospital, Pitts currently met the criteria for civil commitment under the Georgia Code, and was still likely to do harm to himself or to others. Apparently because the trial court did not require the state to introduce new and independent evidence of incompetency, Pitts contends that the trial court relied upon a continuing state of incompetency, shifted the burden to Pitts to show competency, and reached the determination on incompetency without benefit of supporting evidence.

Appellant attempts to isolate the present civil commitment proceedings from the facts in support of the predecessor commitment action following acquittal of criminal charges by reason of insanity. We acknowledge that precepts of due process require a clear and convincing standard of proof in a civil proceeding to commit an individual to a mental hospital involuntarily. Addington v. Texas, — U. S. — (99 SC 1804, 60 LE2d 323). However, in this case we are not concerned with the initial commitment of an individual, involving the first loss of freedom. Pitts had been examined three separate times to determine competency. There had been a judicial determination that he was not mentally responsible for his crimes and apparently not competent to stand trial. Though the trial court did not indicate that it had considered it, there did indeed exist a continuing presumption of insanity at the time of the release hearing. *Pennewell v. State,* 148 Ga. App. 611 (1) (251 SE2d 832). Contrary to Pitts' assertion, the trial court had for its

consideration the evidence of numerous prior committals for psychiatric treatment, evidence that following release from such structured treatment, Pitts had suffered decompensation and had often become violent and aggressive toward himself or others when not undergoing a regular course of treatment and medication. This evidence is included in the record before this court, and apparently was considered by the court below. Moreover, we conclude that the trial court could properly consider such evidence even though the state did not affirmatively offer it or any additional evidence at the release hearing. See *Dubose v. State,* 148 Ga. App. 9 (251 SE2d 15). We are satisfied that there was sufficient competent evidence to convince the trial court beyond a reasonable doubt that the release should be denied (Code Ann. § 88-506.2), in spite of the contrary opinion of the treating physician, which the trial court legally could disregard in view of the conflicting evidence. *Birge v. State,* 142 Ga. App. 735, 737 (1) (236 SE2d 906) (reversed on other grounds in *State v. Birge,* 240 Ga. 501 (241 SE2d 213)).

In fact, even if accepted by the court, the physician's testimony at best shows only that appellant did not engage in aggressive, psychotic behavior and was not mentally ill *during the nine-month stay at Central State Hospital* while he, perforce, was in a structured environment. In view of appellant's medical history, the history of his functioning in society, and the history of the case — all of which are facts which the trial court is certainly authorized to consider, regardless of the presumption set forth in *Pennewell,* supra — the trial court was authorized to find that the criteria for civil commitment at § 88-501 (v) have been met. We find no merit in any of the enumerations advanced by the appellant.

*Judgment affirmed. Quillian, P. J., and Smith, J., concur.*

ARGUED SEPTEMBER 10, 1979 — DECIDED OCTOBER 11, 1979.

*Howard Sokol,* for appellant.

*Lewis R. Slaton, District Attorney, Joseph J. Drolet,*

*R. David Petersen, Assistant District Attorneys,* for appellee.