## 35775. CLARK v. THE STATE.

MARSHALL, Justice.

This case is here on certiorari. Presented for decision are questions concerning our procedures under Code Ann. § 27-1503 (Ga. L. 1977, pp. 1293, 1295) for committing to mental hospitals persons who have been found not guilty of crimes by reason of insanity. (Such persons will be referred to hereinafter at times as "insanity acquittees.") In *Skelton v. Slaton*, 243 Ga. 426 (254 SE2d 704) (1979), we held that the procedures established under Code Ann. § 27-1503 are constitutional. Although we find it necessary to re-examine these procedures in light of, among other things, Addington v. Texas, —- U.S. —- (99 SC 1804, 60 LE2d 323) (1979), we adhere to our holding in *Skelton* that § 27-1503 is constitutional.

1. *State Law Concerning Insanity Acquittals.* In Georgia, there is a presumption of sanity. Code Ann. § 26-606 (Ga. L. 1968, pp. 1249, 1270); *Durham v. State,* 239 Ga. 697 (1) (238 SE2d 334) (1977). Accordingly, it has been held that where a defendant in a criminal case files a general plea of insanity,[1] i.e., he argues that he is not guilty of the crime by reason of being insane at the time of its commission, the burden is on the defendant to establish by a preponderance of the evidence that he was insane. *Durham v. State,* supra, and cits. Georgia follows the so-called "McNaughton rule," as well as a "delusional compulsion" test, for determining whether one has the mental capacity to commit a criminal offense. "A person shall not be found guilty of a crime if at the time of the act, omission, or negligence constituting the crime, such person did not have mental capacity to distinguish between right and wrong in relation to such act, omission, or negligence." Code Ann. § 26-702 (Ga. L. 1968, pp. 1249, 1270). "A person shall not be found guilty of a crime when at the time of the act, omission, or negligence constituting the crime, such person, because of mental disease, injury, or congenital deficiency, acted as he did because of a delusional compulsion as to such act which overmastered his will to resist committing the crime." Code Ann. §

---

[1]The general plea of insanity must be distinguished

26-703 (Ga. L. 1968, pp. 1249, 1270).

Code Ann. § 27-1503 (a) requires the trial judge to instruct the jury to specify in their verdict if the accused is being acquitted of a crime because of mental incompetency or insanity at the time of the commission of the act. The court is required to retain jurisdiction over the person so acquitted and immediately inquire into the insanity of the person at the time of acquittal, and "upon a showing of good cause by the prosecutor, [the court] may defer ruling upon the same and order such person to be confined in a State mental hospital, to be selected by the Department of Human Resources for a period of not less than 30 days." Code Ann. § 27-1503(a) further states that such persons who have been committed to the Department of Human Resources shall not be released from confinement unless and until the court which committed them, after notice and hearing, shall find and determine that such persons do not meet the criteria for civil commitment under Code Ch. 88-5 or 88-25.

Subsection (b) of Code Ann. § 27-1503 allows an application for the release of a person who has been committed to the Department of Human Resources under subsection (a), upon the ground that he does not meet the civil commitment criteria under Code Ch. 88-5 or 88-25, to be made to the superior court of the county from which he was committed. However, no hearing upon such application is allowed until the person committed shall have been confined for a period of not less than 30 days

---

from a special plea of insanity, which argues, not that the defendant was insane at the time the crime was committed, but that he presently does not have the mental competency to stand trial. Code Ann. § 27-1502 (Ga. L. 1977, pp. 1293, 1296). The issue raised by a special plea of insanity is whether the defendant is capable at the time of the trial of understanding the nature and object of the proceedings going on against him and rightly comprehends his own condition in reference to such proceedings, and is capable of rendering his attorney such assistance as a proper defense to the indictment returned against him demands. *Brown v. State,* 215 Ga. 784, 787 (113 SE2d 618) (1960).

from the date of the order of commitment. If the finding of the court is adverse to releasing such person on the ground that such person meets the civil commitment criteria under Code Ch. 88-5 or 88-25, subsection (b) prohibits a further application from being heard until one year has elapsed from the date of hearing upon his last preceding application.

Under Code § 38-118, there is a presumption of the continued existence of a mental state once proved to exist. Accordingly, it has been held in *Pennewell v. State,* 148 Ga. App. 611 (1) (251 SE2d 832) (1979); *Pitts v. State,* 151 Ga. App. 691 (261 SE2d 435) (1979) and in this case, that where a defendant who has been acquitted of a crime by reason of insanity is ordered committed to a mental hospital under Code Ann. § 27-1503(a) and files an application for release under Code Ann. § 27-1503(b), there is a continuing presumption of insanity at the time of the release hearing.

2. *Course of the Litigation in this Case.* The appellant in this case was tried for murder in December of 1977 and found by the jury to be not guilty by reason of insanity. Pursuant to Code Ann. § 27-1503(a), the trial court ordered that he be confined to a state mental hospital. In April of 1979, he filed with the trial court an application for his release under Code Ann. § 27-1503(b), arguing that he did not meet the criteria for civil commitment set forth in Code Chs. 88-5 and 88-25.

In the release proceeding, the appellant also filed a motion for an order declaring Code Ann. § 27-1503 to be unconstitutional, in that: (1) it denies him the full panoply of due process protections accorded a person in civil commitment proceedings, i.e., notice, hearing, right to counsel, appeal, periodic review, etc.; and (2) the release provisions of Code Ann. § 27-1503 are more stringent than those applicable to other persons who have been civilly committed. The appellant filed another motion for an order declaring that the state, being the party seeking treatment of the appellant, has the burden of proving by clear and convincing evidence that the appellant meets the statutory criteria for civil commitment.

The trial court ruled that the proceedings in this case are civil in nature, being analogous to habeas corpus

proceedings. The trial court further ruled that a presumption of insanity existed in this case at the commencement of the release hearing, and therefore, the burden of proof rested on the appellant to establish by a preponderance of the evidence that he does not meet the statutory criteria for civil commitment.

At the release hearing, the physician treating the appellant at the mental hospital testified that the appellant is afflicted with schizophrenia, but that he is in a state of remission. The physician testified that, in his opinion, the appellant presents no substantial risk of imminent harm to himself or others and that he is not a mentally ill person requiring involuntary treatment. See Division 4, infra. However, the physician did admit that the appellant could have a relapse at any time if he did not take medication which has been prescribed for him in order to control his psychotic behavior. On cross-examination, the physician admitted that persons suffering from the appellant's condition experience reluctance to take prescribed medication when not under supervision. The only other witness to testify at the release hearing was the appellant's mother, who testified that the appellant had improved and that she did not consider him to be dangerous.

The trial court found that the appellant had committed the killing for which the previous murder charge had been brought after he had quit taking his medication upon being released from a mental hospital. The petitioner testified, "that's how I got in trouble." (The "trouble" was killing his grandmother.) The trial court further found that, as recently as two weeks prior to the release hearing, the petitioner's treating physician had gone on vacation and the petitioner had refused to take his medication. The court ruled that the petitioner continues to meet the criteria for civil commitment, and the application for release was denied. On appeal, the Court of Appeals affirmed, holding that the evidence supports the trial court's ruling that the appellant continues to meet the standard for involuntary commitment. Citing *Pennewell v. State,* supra, the Court of Appeals held that there was a presumption of insanity existing at the commencement of the release hearing. Relying on this

presumption, the Court of Appeals affirmed the trial court in placing the burden on the appellant to prove his eligibility for release.

The question we must decide is whether it is constitutionally permissible to commit to a mental hospital an individual acquitted of a crime by reason of insanity without requiring the state to bear the burden of proving that he presently meets the criteria for civil commitment. The determination of this question requires a consideration of various decisions of the United States Supreme Court, as well as the procedures in Georgia generally applicable in civil commitment proceedings.

3. *United States Supreme Court Decisions.* In Lynch v. Overholser, 369 U. S. 705 (82 SC 1063, 8 LE2d 211) (1962), the Supreme Court recognized the constitutional validity of a statute of the District of Columbia, under which persons acquitted of crimes by reason of insanity were automatically committed to mental hospitals without a hearing.[2] In Lynch, the court held that the automatic commitment provisions of this statute were unavailable after an acquittal by reason of insanity over the defendant's objection.

However, four years later, in Baxstrom v. Herold, 383 U.S. 107 (86 SC 760, 15 LE2d 620) (1966), the Supreme Court held that when a proceeding for civil commitment was brought against a person nearing the end of his prison sentence, he could not be denied the right to a jury trial generally available to others in civil commitment proceedings. The basis for this decision was the equal protection clause of the Fourteenth Amendment. The court in Baxstrom did recognize that equal protection does not require that all persons be dealt with identically. However, language used in the

---

[2]As noted in Lynch, this statute was enacted by Congress for the District of Columbia, because it was anticipated that a high rate of insanity acquittals would follow in the wake of implementation of the "Durham rule." Under the "Durham rule," a person is held not to be criminally responsible for his acts if such person was suffering from mental illness and the crime is a product of that illness.

Baxstrom decision[3] does indicate that there is no basis for distinguishing insanity acquittees from other civil committees in the context of the proceedings used to determine whether they are mentally ill.

One year later, the court decided Specht v. Patterson, 386 U. S. 605 (87 SC 1209, 18 LE2d 326) (1967). Specht had been convicted of "indecent liberties" under Colorado law. This offense carried a maximum penalty of 10 years. In lieu of sentencing the defendant for the sex offense, Colorado's Sex Offender Act authorized the trial judge to sentence the defendant to an indeterminate term in the "sex deviate facility" of the state prison, if the trial judge found that the defendant constituted a threat of bodily harm to members of the public or was an habitual offender and mentally ill.

The court held that the latter finding was not an ingredient of the offense of "indecent liberties" and, therefore, due process of law required that this finding be made by the trial court after conducting a hearing at which the defendant was extended the full panoply of relevant due process protections, to wit: notice, right to be present with counsel, opportunity to be heard, right to confront and cross-examine witnesses, and right to offer evidence. See also Vitek v. Jones, — U.S. — (Docket No. 78-1155; decided March 25, 1980).

In Bolton v. Harris, 395 F2d 642 (D.C. Cir. 1968), the District of Columbia Circuit Court of Appeals was called upon to assess the impact of Baxstrom and Specht upon

---

[3]As the court stated in Baxstrom, "Classification of mentally ill persons as either insane or dangerously insane of course may be a reasonable distinction for purposes of determining the type of custodial or medical care to be given, but it has no relevance whatever in the context of the opportunity to show whether a person is mentally ill *at all*. For purposes of granting judicial review before a jury on the question whether a person is mentally ill and in need of institutionalization, there is no conceivable basis for distinguishing the commitment of a person who is nearing the end of a penal term from all other civil commitments." 383 U. S. at pp. 111-112.

the District of Columbia's statutory scheme for the automatic commitment of insanity acquittees. The federal court of appeals had to consider the validity of the statutory scheme in light of a newly enacted civil commitment statute requiring a judicial determination before other persons could be involuntarily committed. The Bolton court held that, under Baxstrom and Specht, before persons acquitted of crimes by reason of insanity could be committed to mental hospitals, such persons had to be given judicial hearings substantially similar to those in other civil commitment proceedings. The court in Bolton held that the post-acquittal hearing to inquire into the defendant's present mental condition was required under Specht, as a matter of due process, and under Baxstrom, as a matter of equal protection. In recent decisions, courts have adopted Bolton's interpretation of Baxstrom, which has been referred to as the "Bolton rationale." See Powell v. Florida, 579 F2d 324 (5th Cir. 1978); Lee v. Kolb, 449 FSupp. 1368 (W. D. N.Y. 1978); Allen v. Radack, 426 FSupp. 1052 (D. S.D. 1977) and cits; New Jersey v. Krol, 68 N.J. 236 (344 A2d 289) (Sup. Ct. of N.J. 1975) and cits.

However, as recognized in Bolton v. Harris, supra, the treatment of persons acquitted of crimes by reason of insanity in a manner different from other civil committees is justifiable under the equal protection clause "to the extent that there are relevant differences between these two groups." Bolton v. Harris, supra, 395 F2d at 651, or, as stated in Powell v. Florida, supra, if the different procedures "relate to a legitimate State interest." 579 F2d at 332. Thus, although one acquitted by reason of insanity must be given a hearing on present mental condition, summary commitment is permissible for a limited period of time necessary for evaluation and diagnosis of the insanity acquittee. Ragsdale v. Overholser, 281 F2d 943 (D.C. Cir. 1960); New Jersey v. Krol, supra; Lee v. Kolb, supra. And, because insanity acquittees have demonstrated their dangerous propensities by committing prior criminal acts, judicial approval can be required for their release even though such approval is not required for the release of other civil committees. United States v. Ecker, 543 F2d 178 (D.C. Cir.

1976), cert. den. 429 U. S. 1063 (1977); Powell v. Florida, supra.

In 1972, in Humphrey v. Cady, 405 U. S. 504 (92 SC 1048, 31 LE2d 394) (1972), the court extended the Baxstrom principle to commitment in lieu of sentencing following conviction as a sex offender.

Humphrey had been convicted of contributing to the delinquency of a minor, a misdemeanor punishable by a maximum sentence of one year in prison. In lieu of sentencing, he was committed to the "sex deviate facility" in state prison, under the Wisconsin Sex Crimes Act, which authorized commitment for a period equal to the maximum sentence authorized for the crime. At the end of that period, the state could petition for the renewal of commitment for five years.

Humphrey argued that the original and renewal commitment procedures were unconstitutional under Baxstrom and Specht. The Supreme Court held that this claim was substantial enough to require a hearing to determine what justification existed for denying persons committed under the Sex Crimes Act of the jury determination afforded to other persons in civil commitment proceedings.

The State of Wisconsin argued that the same procedural safeguards afforded in a civil commitment proceeding were not required under the Sex Crimes Act, because commitment thereunder was triggered by a criminal conviction, and was merely an alternative to penal sentencing. In response to this argument, the court noted, "That argument arguably has force with respect to an initial commitment under the Sex Crimes Act, which is imposed in lieu of sentence, and is limited in duration to the maximum permissible sentence. The argument can carry little weight, however, with respect to the subsequent renewal proceedings. . ." 405 U. S. at pp. 510, 511.

Also in 1972, the Supreme Court decided Jackson v. Indiana, 406 U. S. 715 (92 SC 1845, 32 LE2d 435). Jackson had been committed to a mental hospital after being found incompetent to stand trial on criminal charges which had been brought against him. The court held that the state could hold him only for a reasonable period of

time necessary to determine whether there was a "substantial probability" of his obtaining his capacity in the "foreseeable future." If there was no such probability, the court ruled that he must either be released or the state must commence civil commitment proceedings, at which the standards for commitment and release were the same as those applicable to others in civil commitment proceedings. The basis for the decision in Jackson was the equal protection clause of the Fourteenth Amendment.[4]

In Jackson, the court noted with approval that the Baxstrom principle had been extended to commitments following an insanity acquittal in Bolton v. Harris, supra, Cameron v. Mullen, 387 F2d 193 (D.C. Cir. 1967) and New York v. Lally, 19 N.Y. 2d 27 (277 NYS2d 654, 224 NE2d 87) (1966).

In the recent decision of Addington v. Texas, supra, the court has held that when the state brings an involuntary civil commitment proceeding, the due process clause of the Fourteenth Amendment requires the state to justify confinement of the individual by proof more substantial than a mere preponderance of the evidence, although the reasonable doubt standard applicable in criminal cases is not constitutionally required. Addington had been committed to a mental institution based upon proof of his mental illness by clear and convincing evidence. The court held that this standard of proof satisfied due process.

4. *Georgia Civil Commitment Statutes.* Code Ch. 88-5 (Ga. L. 1978, p. 1789 et seq.) establishes hospi-

---

[4]The United States Supreme Court employs a two-tiered analysis in determining equal protection claims. The state need only show a rational basis for treating people differently unless the differential treatment involves "invidious standards" or infringes upon "fundamental rights," in which case a "compelling state interest" must be shown. In Baxstrom, Humphrey, and Jackson, supra, it is unclear whether the Supreme Court is applying the rational basis test or the strict scrutiny test. See New Jersey v. Krol, supra, 344 A2d at 298.

talization and treatment procedures for the mentally ill, and Code Ch. 88-25 (Ga. L. 1978, p. 1826 et seq.) establishes procedures for habilitation of mentally retarded persons.

Under Code § 88-501 (a), "mentally ill" means "having a disorder of thought or mood which significantly impairs judgment, behavior, capacity to recognize reality, or ability to cope with the ordinary demands of life." Code Ann. § 88-501 (v) defines "mentally ill person requiring involuntary treatment" as "a person who is mentally ill and (1) who presents a substantial risk of imminent harm to himself or others as manifested by recent overt acts or recent expressed threats of violence which present a probability of physical injury to himself or to other persons, or (2) who is so unable to care for his own physical health and safety as to create an imminently life-endangering crisis."

Code Ann. § 88-2502 (a) defines "mental retardation" as "a state of significantly subaverage general intellectual functioning existing concurrently with deficits in adaptive behavior which originates in the developmental period." Code Ann. § 88-2502 (d) defines "mentally retarded person in need of community services" as "a mentally retarded person who, after comprehensive evaluation and hearing, is found to be in need of community services as defined in Section 99-3303 (c) of the Community Services Act for the Mentally Retarded."

Code Ann. §§ 88-502.18 and 88-2503.18 require that "representatives" or guardians ad litem be appointed on behalf of persons alleged to be mentally ill requiring involuntary treatment or mentally retarded in need of community services. Persons alleged to be mentally ill or retarded cannot be detained in a mental hospital beyond a brief evaluation period unless voluntary hospitalization is sought or a team of medical experts makes a recommendation that they be involuntarily committed. See Code Ann. §§ 88-506.2 (a), 88-2504 (d). If such a recommendation is made, a "full and fair hearing" must be conducted for the purpose of determining whether the person meets the criteria for involuntary civil commitment. Code Ann. §§ 88-506.2 (a), 88-2504 (e). The person sought to be committed and his "representative" or

guardian ad litem are entitled to notice of the hearing and the person's rights at the hearing, viz., right to counsel, copy of an individualized treatment plan specifically tailored to his needs, right to be examined by a physician of his own choice at his own expense. See Code Ann. §§ 88-506.2 (a) (1)—(5), 88-2504 (e) (1)—(4). The right to a hearing can be waived, at least under Code Ch. 88-5. See Code Ann. § 88-506.2 (a) (5).

In the case of an individual who is 17 years of age or older, the hearing is in probate court; and in the case of an individual who is under the age of 17 years, the hearing is in juvenile court. Code Ann. §§ 88-501 (a), 88-501 (r), 88-2502 (n), 88-2502 (p). Code Ann. §§ 88-501 (a) and 88-2502 (p) enumerate the following procedural safeguards which must be observed at the "full and fair hearing": The person who is the subject of the commitment proceeding is entitled to the effective assistance of counsel, and if he cannot afford counsel, the court is required to appoint counsel for him. The person also has the right to refuse in writing the appointment of counsel. The person has the right to confront and cross-examine witnesses and to offer evidence. The person has the right to subpoena witnesses and to require testimony in person or by deposition from any physician upon whose evaluation the decision may rest. In addition, the court shall apply the rules of evidence applicable in civil cases; the burden of proof shall be upon the party seeking treatment of the person; and the standard of proof shall be by clear and convincing evidence.[5]

---

[5]Code Ann. § 88-501 (u) provides: " 'Full and fair hearing' or 'hearing' shall mean a proceeding before a hearing examiner, under § 88-506.5, or before a court, as defined in subsection (r) of this section. The hearing may be held in a regular courtroom or in an informal setting, in the discretion of the hearing examiner or the court, but the hearing shall be electronically recorded or recorded by a qualified court reporter. The patient shall be provided with effective assistance of counsel. If the patient cannot afford counsel, the court shall appoint counsel for him or the hearing examiner shall have the superior court

If continued treatment is required beyond the period during which the hospital is authorized to retain the individual, the hospital must petition the court for an order for continued treatment. See Code Ann. §§ 88-506.5 (a), 88-2507 (a). A "full and fair hearing," as defined in Code Ann. §§ 88-501 (u) and 88-2502 (p), must be held on the petitions. See Code Ann. §§ 88-506.5 (c) and 88-2507 (b). The patient and his "representative" or guardian ad litem are entitled to notice of the hearing. Id. The mentally ill person is expressly given the right to waive the hearing. Code Ann. §§ 88-506.5 (c), 88-506.2 (a) (5). These renewal hearings are before a hearing examiner. See Code Ann. §§ 88-506.4, 88-506.5, 88-2506, 88-2507.

5. *Conclusions.* In order to put our rulings in this case in focus, it is helpful to briefly review the relevant provisions of Code Ann. § 27-1503: subsection (a) requires the jury to specify in their verdict whether the defendant is being acquitted of the crime by reason of mental incompetence or insanity at the time of the commission of

---

appoint such counsel. However, the patient shall have the right to refuse in writing the appointment of counsel, in the discretion of the hearing examiner or the court. The patient shall have the right to confront and cross-examine witnesses and to offer evidence. The patient shall have the right to subpoena witnesses and to require testimony before the hearing examiner or in court in person or by deposition from any physician upon whose evaluation the decision of the hearing examiner or the court may rest. The patient shall have the right to obtain a continuance for any reasonable time for good cause shown. The hearing examiner and the court shall apply the rules of evidence applicable in civil cases. The burden of proof shall be upon the party seeking treatment of the patient. The standard of proof shall be by clear and convincing evidence. At the request of the patient, the public may be excluded from the hearing, and the patient need not be present if the patient consents; in either of these events however, the record shall reflect the reason for the hearing examiner's or the court's action."

The provisions of Code Ann. § 88-2502 (p) are comparable.

the act. If there is an insanity acquittal, the trial court must retain jurisdiction over the person so acquitted and immediately inquire into the sanity of the person at the time of the acquittal. Upon a showing of "good cause" by the prosecutor, the court may defer ruling on the defendant's sanity at the time of the acquittal and order such person to be confined to a state mental hospital for not less than 30 days. After expiration of the 30-day period, subsection (b) gives such person the right to file an application for release, upon the ground that he does not meet the statutory criteria for civil commitment.

Although Code Ann. § 27-1503 (a) does not define "good cause," we interpret it to mean a showing that there is reasonable cause to believe that the defendant presently meets the criteria for civil commitment. The summary commitment of the defendant for evaluation for a period not less than 30 days is constitutionally permissible. Ragsdale v. Overholser, supra; Bolton v. Harris, supra; New Jersey v. Krol, supra; Lee v. Kolb, supra.

The next question which arises is whether Code Ann. § 27-1503 is constitutionally deficient in that it does not require that a hearing be held after the 30-day evaluation period, even though it allows the defendant to invoke a hearing by filing an application for release.

We hold that all that due process requires is that the insanity acquittee be given a right to a hearing. This is a constitutional right, but, like other constitutional rights, it can be waived. The waiver is accomplished here if the insanity acquittee, or his appointed "representative" or guardian ad litem,[6] declines to file an application for release. Code Ch. 88-5 expressly gives the mentally retarded person the right to waive his commitment hearing. See Division 4, supra. Therefore, there is no equal protection violation. In addition, a hearing on the defendant's application for release has been held in this case; therefore, any due process problem arising from § 27-1503's failure to require a hearing has become moot.

---

[6]As held infra, the insanity acquittee has a right to have "representatives" appointed to guard his interests.

Accord, Powell v. Florida, supra.

This case resolves itself into essentially two other questions:

(1) What procedural safeguards that are observed at other civil commitment hearings must be observed when there is a hearing on the question of whether a person acquitted of a crime by reason of insanity meets the criteria for civil commitment?

(2) Where a person acquitted of a crime by reason of insanity is ordered committed to a mental hospital under § 27-1503 (a), and files an application for release under § 27-1503 (b), who bears the burden of proof on the question of whether such person presently meets the criteria for civil commitment?

When there is a hearing on the question of whether a person acquitted of a crime by reason of insanity meets the criteria for civil commitment, equal protection requires that the following rights, which are extended to other people in civil commitment proceedings, be extended to the insanity acquittee:

(1) Notice of the right to the hearing. Code Ann. §§ 88-506.2 (a) (1), 88-2504 (e). (Thus, after expiration of the 30-day period specified in § 27-1503 (a), the insanity acquittee and his "representatives" or guardian ad litem are entitled to notice of his right to obtain a hearing by filing an application for release.)

(2) Notice of the right to counsel and the right to have counsel appointed if the person cannot afford counsel. Code Ann. §§ 88-506.2 (a) (2), 88-2504 (e) (2).

(3) The right to confront and cross-examine witnesses and to offer evidence. Code Ann. §§ 88-501 (u), 88-2502 (p).

(4) The right to subpoena witnesses and to require testimony be given in person or by deposition from any physician upon whose evaluation the decision may rest. Id.

(5) Notice of the right to have established some sort of individualized plan specifically tailored to the person's treatment needs. Code Ann. §§ 88-501 (w), 88-506.2 (a) (3), 88-2502 (i), 88-2504 (e) (3).

(6) Notice of the right to be examined by a physician of his own choosing at his own expense. Code Ann. §§

88-506.2 (a) (4), 88-2504 (e) (4).

(7) The insanity acquittee also has a right to have "representatives" or guardian ad litem appointed in his behalf. When other persons are ordered committed to mental hospitals, Code Ann. §§ 88-502.18 and 88-2503.18 require that "representatives" or guardians ad litem be appointed in their behalf. In order that the insanity acquittee be treated equally, and in order that the previously enumerated rights of the insanity acquittee be safeguarded, "representatives" or guardians ad litem should be appointed in his behalf also.

It is, however, permissible to require judicial approval before the insanity acquittee can be released, even though other persons cannot be involuntarily committed unless a team of medical experts so recommends. See Code Ann. §§ 88-506.2 (a), 88-2504 (d).

The final question for decision concerns the allocation of the burden of proof in a release proceeding under § 27-1503 (b). In order to answer this question, we must first determine whether the insanity acquittal can be accurately viewed as an adjudication that the defendant met the criteria for civil commitment at the time the act was committed. If that question is answered in the affirmative, we must then determine whether the presumption of the continuation of a mental state once proved to exist can be constitutionally applied so as to relieve the state of the burden of proof at the release hearing.

In this case, the appellant's acquittal of murder by reason of insanity necessarily constituted a finding by the jury that, at least at the time the act was committed, the appellant met the criteria for civil commitment under Code Ann. §§ 88-501 (a) and (v), defining "mentally ill person requiring involuntary treatment" as a person "having a disorder of thought or mood which significantly impairs judgment, behavior, capacity to recognize reality, or ability to cope with the ordinary demands of life . . . and (1) who presents a substantial risk of imminent harm to himself or others as manifested by either recent overt acts or recent expressed threats of violence which present a probability of physical injury to himself or to other persons . . ."

Code § 38-118's presumption of the continuation of this mental state comports with due process, because it is rational to assume that, once a mental state is proven to exist, it continues to do so in the absence of evidence to the contrary. See Waite v. Jacobs, 475 F2d 392, 399-400 (D.C. Cir. 1973); see generally Ulster County Court v. Allen, — U. S. — (99 SC 2213, 60 LE2d 777) (1979).

However, in both original and renewal commitment proceedings, the burden of proof under Code Ann. §§ 88-501 (u) and 88-2502 (p) would be on the party seeking treatment of the patient. In this release proceeding, the burden of proof was cast on the appellant, because of the presumption of the continuation of a proven mental state and because the moving party generally bears the burden of proof in civil cases. See Code § 38-103. Code Ann. §§ 88-501 (u) and 88-2502 (p) do state that the court shall apply the rules of evidence applicable in civil cases.

Other courts have recognized the constitutional validity of requiring insanity acquittees to bear the burden of proving their fitness for release in order to obtain release from a mental hospital, where a similar burden of proof was placed on other civil committees seeking release. See Dorsey v. Solomon, 604 F2d 271 (4th Cir. 1979); New Hampshire v. Hesse, 373 A2d 345 (Sup. Ct. of N.J. 1977); Kovach v. Schubert, 64 Wis.2d 612 (219 NW2d 341) (1974), app. dismissed, 419 U.S. 1117 (1975);[7] Waite v. Jacobs, supra; Bolton v. Harris, supra. However, Bolton v. Harris, supra, holds on equal protection grounds that the insanity acquittee not have any greater burden of proof cast on him than other civil committees.

The question we have to decide is whether the insanity acquittee is denied equal protection of the law, if he is required to bear the burden of proving his fitness for release while other civil committees are not. We hold that no equal protection violation occurs, because, as

---

[7]In Kovach, the Supreme Court dismissed for want of a substantial federal question a state court judgment requiring an insanity acquittee, who had been automatically committed, to bear the burden of proving his fitness for release in habeas corpus proceedings.

previously stated, the insanity acquittees have demonstrated their dangerous propensities by committing the physical elements of a crime. In our opinion, this differentiates them from other civil committees and makes it permissible under the equal protection clause to require them to bear the burden of proving their fitness for release. Accord, State v. Kee, 510 SW2d 477 (Mo. Sup. Ct. 1974); Chase v. Kearns, 278 A2d 132 (Me. Sup. Jud. Ct. 1971); Dixon v. Jacobs, 427 F2d 589 (D.C. Cir. 1970) (Leventhal, J., concurring). See generally Anno., Validity of Statutory Provision for Commitment to Mental Institution of One Acquitted of Crime on Ground of Insanity Without Formal Determination of Mental Condition at Time of Acquittal, 50 ALR3d 144 (1973). However, Humphrey v. Cady, supra, indicates that when the insanity acquittee seeks release from a mental hospital after being committed for the maximum period during which he could have been incarcerated for the crime charged, the equal protection clause forbids any procedural discriminations between him and other civil committees. See Waite v. Jacobs, supra.

Those courts which have forbidden insanity acquittees from being committed on the basis of a presumption of insanity arising from the jury verdict of not guilty by reason of insanity have noted that, under the law of the particular jurisdiction, the insanity acquittal raised only a reasonable doubt as to the defendant's sanity at the time of the offense. Waite v. Jacobs, 475 F2d 392, supra, p. 396; Powell v. Florida, 579 F2d 324, supra, p. 330; Lee v. Kolb, 449 FSupp. 1368, supra, p. 1374; Allen v. Radack, 426 FSupp. 1052, supra, p. 1058. However, in Georgia, the defendant is required to establish his insanity by a preponderance of the evidence. *Durham v. State,* 239 Ga. 697, supra. In addition, implicit within a verdict of acquittal by reason of insanity is a finding that the state has carried its burden of proof beyond a reasonable doubt that the defendant did commit the criminal act for which he was tried, although there was no criminal culpability. Lee v. Kolb, supra.

We are of the opinion that the appellant's insanity acquittal clearly and convincingly established that he met the criteria for civil commitment at the time he

committed the offense charged. Therefore, we find that committing him to a mental hospital, without requiring the state to carry the burden of proving that he meets the criteria for commitment at a post-acquittal hearing, does not offend concepts of due process as enunciated in Addington.

Nor are the other previously cited Supreme Court decisions violated, as long as the defendant is able to obtain a post-acquittal hearing at which (1) there is a judicial inquiry into his present mental condition, and (2) he is afforded substantially the same procedural safeguards that are extended in other civil commitment hearings. This was done in the present case. We find no error.

*Judgment affirmed. All the Justices concur, except Jordan, P. J., and Hill, J., who concur in the judgment only.*

ARGUED FEBRUARY 11, 1980 — DECIDED
APRIL 9, 1980.

*Howard G. Sokol, Gina Bailey, Jonathan A. Zimring, John L. Cromartie, Jr.,* for appellant.
*H. Lamar Cole, District Attorney,* for appellee.