## 66423, 66424. MOSES v. THE STATE (two cases).

QUILLIAN, Presiding Judge.

The defendant, Larry Moses, was indicted twice on charges of rape. A "special plea of insanity" was entered on September 16, 1981. The defendant was committed to Grady Memorial Hospital for observation to determine his capacity to intelligently participate in his trial. The Grady report from the Psychiatric and Law Service section stated that it was their clinical impression that defendant was unable to effectively assist his counsel or meaningfully participate in his trial "as a result of his psychotic condition." They found that his history and symptoms were indicative of "Schizophrenia Paranoid Type," and that he should be transferred to an inpatient facility for treatment.

On October 2, 1981, the State and the defense stipulated that Moses was unable to assist in his defense. Defendant was admitted to the Forensic Services Division of Central State Hospital and noted to be "agitated and suspicious . . . guarded and evasive . . . talked in a rambling and disorganized fashion and expressed a wealth of delusional material . . . also appeared to be actively hallucinating . . ." Following treatment, on January 21, 1982, the defendant was returned for trial with the staff opinion that Moses had improved and could communicate with his attorney in a rational manner in the formulation of his defense.

On May 14, 1982, the judgment of the court revealed that defendant had entered "a plea of not guilty by reason of insanity" — which was not controverted by the State, waived a jury trial, and "presented sufficient evidence in support thereof . . ." The court found "the defendant not guilty by reason of insanity" and ordered him committed to a state hospital for the mentally ill for a period not to exceed one year. He was not to be released except upon compliance with "Chapter 88-5 . . ." (Code Ann. § 88-501 et seq.; now OCGA § 37-3-1 et seq.).

On July 22, 1982, following a hearing brought on behalf of the Georgia Regional Hospital, the Superior Court of Fulton County held that Moses "now meets the criteria for civil commitment under Ga. Code Ch. 88-5" and his petition for release was denied. An order of December 8, 1982, amended the order of July 22 by adding that "because of [his] mental condition [the defendant] is dangerous to himself, as well as, others." The record also shows that defendant again petitioned for release and was granted a hearing on January 27, 1983 before the Superior Court of Fulton County, which was denied. He brings these appeals from the order of the court following the January 1983 hearing. *Held:*

1. The first two enumerated errors contend the Superior Court of Baldwin County has jurisdiction over the defendant and the Superior Court of Fulton County was without authority to order him to be held in Central State Hospital on January 27, 1983. We do not agree.

The defendant entered his plea of not guilty by reason of insanity — which was accepted, in the Superior Court of Fulton County. And, it was the Fulton County Court which committed the defendant to Central State Hospital for treatment. Our Code provides that "[w]henever a defendant is found not guilty by reason of insanity at the time of the crime, the court shall retain jurisdiction over the person so acquitted and shall order such person to be detained in the state mental health facility . . ." OCGA § 17-7-131 (d); formerly Code Ann. § 27-1503. Subsection (f) of OCGA § 17-7-131 (Code Ann. § 27-1503) provides that "[a] defendant who has been found not guilty by reason of insanity at the time of the crime and is ordered committed to the Department of Human Resources under subsection (e) of this Code section may only be discharged from that commitment by order of the committing court in accordance with the procedures specified in this subsection . . ." Subsection (f) of the same Code section also requires that "[a]pplication for the release . . . may be made to the committing court . . ." The intent of the legislature is clear beyond cavil that the committing court retains jurisdiction of the acquitted-committed defendant. These enumerations are without merit.

2. It is alleged that the trial court erred in failing to release the defendant from Central State Hospital because he did not meet the requirements for involuntary civil commitment of OCGA § 37-3-1 (11) and (12) (Code Ann. § 88-501). Application for release of a defendant who has been committed to DHR after being found not guilty by reason of insanity is made on the ground "that he does not meet the civil commitment criteria under Chapter 37-3 or Chapter 37-4 . . ." OCGA § 17-7-131 (f) (1) (Code Ann. § 27-1503). OCGA Chapter 37-3 (Code Ann. Ch. 88-5) deals with the "mentally ill." Chapter 37-4 (Code Ann. Ch. 88-25) relates to the "mentally retarded." In the instant case we are dealing only with an issue of mental illness — not retardation, therefore Chapter 37-4 (Code Ann. Ch. 88-25) is inapposite.

Methods for invoking civil involuntary commitment proceedings for those persons who are alleged "to be a mentally ill person requiring involuntary treatment" are found in OCGA §§ 37-3-41 (Code Ann. § 88-504.2) and 37-3-61 (Code Ann. § 88-505.2). OCGA § 37-3-1 (11) (Code Ann. § 88-501) provides: " 'Mentally ill' means having a disorder of thought or mood which significantly

impairs judgment, behavior, capacity to recognize reality, or ability to cope with ordinary demands of life." And, a " '[m]entally ill person requiring involuntary treatment' means a person who is mentally ill and (A) who presents a substantial risk of imminent harm to himself or others, as manifested by either recent overt acts or recent expressed threats of violence which present a problem of physical injury to himself or to other persons, or (B) who is so unable to care for his own physical health and safety as to create an imminently life-endangering crisis." OCGA § 37-3-1 (12) (Code Ann. § 88-501). This latter subsection — "B," is not involved in this appeal. Accordingly, at issue is whether the defendant is "mentally ill" and "presents a substantial risk of imminent harm to himself or others . . ."

We begin our analysis by noting that it was the defendant who voluntarily invoked the court's ruling that he was insane — and, according to the court's order "presented sufficient evidence in support thereof . . ." Therefore, the court found the defendant was insane at the time of the offenses charged and was not guilty of the charges of rape. He now seeks his release from further treatment for the criminally insane. "Under Code § 38-118 [now OCGA § 24-4-21], there is a presumption of the continued existence of a mental state once proved to exist. Accordingly, it has been held in *Pennewell v. State,* 148 Ga. App. 611 (1) (251 SE2d 832) (1979); *Pitts v. State,* 151 Ga. App. 691 (261 SE2d 435) (1979), and in this case, that where a defendant who has been acquitted of a crime by reason of insanity is ordered committed to a mental hospital under Code Ann. § 27-1503 (a) [now OCGA § 17-7-131 (e)] and files an application for release under Code Ann. § 27-1503(b) [now OCGA § 17-7-131 (f)], there is a continuing presumption of insanity at the time of the release hearing." *Clark v. State,* 245 Ga. 629, 631 (266 SE2d 466).

The application for release must be made to the committing court and the burden of proof is upon the applicant. OCGA § 17-7-131 (f) (Code Ann. § 27-1503). The hearing is before the judge alone, who acts as the juror and finder of fact. OCGA § 17-7-131 (f) (3) (Code Ann. § 27-1503). "Jurors are not bound by the opinions of either lay witnesses or expert witnesses as to the question of sanity and they may rely on the basic presumption existing under our law. [Cits.] . . . The jury is free to reject expert testimony as to sanity" and rely on the general presumption of insanity in the instant case arising from the defendant's plea of insanity at the trial, which was a continuing presumption at the time of the hearing. *Moses v. State,* 245 Ga. 180, 181 (263 SE2d 916), U. S. cert. den. 449 U. S. 849; see also *Brooks v. State,* 247 Ga. 744, 745 (279 SE2d 649); and *Brown v. State,* 250 Ga. 66, 71 (295 SE2d 727).

It was the opinion of the staff of Central State Hospital that the defendant is not now "mentally ill" and does not meet the criteria for continued involuntary treatment. They were aware of other doctor's opinions that he had been diagnosed as a "paranoid schizophrenic" and of having symptoms "consistent with organic brain syndrome." Further, they knew that there were prior offenses of aggravated assault, rape, and robbery, which had been reduced to lesser charges. They also had knowledge that he had been transferred to their facility because of his escape from the regional treatment facility where he "was inappropriate towards female staff, was very manipulative of the female patients, was involved in two or three altercations, fights with other residents and similar behavior ..." One of the experts stated that if the applicant was released the staff was "of the opinion that he would be likely to repeat the same kind of acts that he has in the past as a part of his lifestyle." There was a chance "he would repeat the same acts of violence . . ." The psychiatrist testified that ". . . he is not dangerous as a result of mental disorder as defined by 885 [Ga. Code Ch. 88-5; now OCGA 37-3]. THE COURT: Do you mean to tell me with all these rapes that you have here, that he is not dangerous ...? THE WITNESS: Your Honor, not as a professional but as a personal opinion, I would say that anyone that does that kind of thing is dangerous." The same psychiatrist advised that the defendant should avoid drugs, alcohol, and stressful situations — particularly gambling and illegal activities "because I don't think that he can stay away from those kind of things and I think those things lead him further into a lifestyle that he cannot manage and result in his committing crimes . . . his history would make him a risk but not because he is sick." The psychiatrist was asked: "[I]s he dangerous? A. Yes."

In summary, we find that a plea of not guilty by reason of insanity is a plea of confession and avoidance — it admits the facts pleaded in the indictment, but avoids conviction because of the condition of insanity of the defendant at the time of the offense. People v. Love, 70 P2d 202 (1) (21 CA2d 623); Boyd v. People, 116 P2d 193 (3) (108 Col. 289); People v. Wells, 202 P2d 53 (24) (33 C2d 330); State v. Quigley, 199 A. 269 (135 Me. 435); State v. Forcier, 63 A2d 235 (95 NH 341); Novosel v. Helgemoe, 384 A2d 124 (118 NH 115); State v. Barbata, 80 SW2d 865 (336 Mo. 362); People v. Dumas, 274 NYS2d 764 (13); 22 CJS 1262, Crim. Law, § 448; see also Clark v. State, 245 Ga. 629 at 645, supra. Under our law the acts admitted by the plea establish that the defendant meets the criteria for civil commitment. Whitfield v. State, 158 Ga. App. 660, 661 (281 SE2d 643); Clark v. State, 245 Ga. 629 at 643, supra. Once that condition has been established it is presumed to continue at the time of the

application for release. *Clark v. State,* 245 Ga. 629 at 631. The burden is on the applicant to establish he does not meet the criteria for involuntary commitment. OCGA § 17-7-131 (f) (2) (Code Ann. § 27-1503). The trial judge, as the finder of fact, is not bound by the opinions of either lay or expert witnesses and may rely upon the basic presumptions permitted by law. *Moses v. State,* 245 Ga. 180, 181, supra.

On appeal, we find that the trial court's findings are supported by ample evidence that the applicant for release meets the standard for continued involuntary commitment under OCGA Ch. 37-3 (Code Ann. Ch. 88-5). *Pennewell v. State,* 148 Ga. App. 611 (1), supra; *Pitts v. State,* 151 Ga. App. 691, 694-695, supra; *Whitfield v. State,* 158 Ga. App. 660, supra.

*Judgments affirmed. Sognier and Pope, JJ., concur.*

DECIDED JULY 6, 1983 —
REHEARING DENIED JULY 25, 1983 — ▮▮▮▮▮▮▮▮▮

*Alexander J. Repasky,* for appellant.
*Lewis R. Slaton, District Attorney, Paul L. Howard, Jr., Joseph J. Drolet, Benjamin H. Oehlert III, Assistant District Attorneys,* for appellee.