## A98A1618. KELLEY v. THE STATE.
### (509 SE2d 110)

McMURRAY, Presiding Judge.

Defendant was tried before a jury and convicted of aggravated assault upon a peace officer. Although defendant notified the State before trial of his intent to raise an insanity defense and proffered expert testimony at trial in support of this defense, the trial court refused to charge on insanity reasoning that insanity is an affirmative defense which is not available to defendant because he denied committing the charged offense. We agree with the trial court's analysis.

The evidence adduced at trial reveals that defendant, while standing outside his female friend's home at 10:30 in the evening on March 5, 1997, pointed a loaded pistol at two law enforcement officers who appeared at the scene in response to an emergency call. Officer Tony Thomason of the Griffin, Georgia Police Department testified that he observed defendant holding a revolver when he arrived at the scene; that he shot at defendant because defendant was pointing the revolver at Officer Thomason's patrol partner, and that he fired a second round at defendant because defendant turned and aimed the revolver at him. Officer Thomason testified that defendant was arrested after these shootings.

Defendant admitted at trial that he was holding a revolver when the officers arrived, but denied aiming the gun at the officers. To this extent, defendant testified that, "I never aimed the gun at either officer." Defendant explained that he was pointing the revolver in the air when he first observed the officers; that he was under stress and contemplating suicide at the time and that he "never saw either of the officers until they came around and arrested [him]." Defendant testified that he did not realize "what was happening" until he heard a command for him to "drop the gun" and the sound of gunfire. Defendant admitted on cross-examination that he told an interrogating officer that he "didn't have the guts to take myself out, so I thought I'd let the Griffin Police Department do it and they missed."

The State's attorney clarified defendant's version of the incident during the following cross-examination: "[STATE'S ATTORNEY:] So

the point of it was to make yourself such a threat to these police officers that they shot and killed you; isn't that what you were after that day? That's what you told the police, sir. . . . Either that's what you were after or it wasn't. You can tell me either way. I'll ask it this way, how about this, you were trying to kill yourself. You couldn't get the — whatever it takes to do that to yourself. And you pointed the gun, at the policeman in the hopes they would shoot and kill you. True or false? [DEFENDANT:] False. I never pointed the gun at the police officers. [STATE'S ATTORNEY:] You deny pointing the gun at them? [DEFENDANT:] I didn't point the gun at them in the statement. [STATE'S ATTORNEY:] Where did you point the gun? [DEFENDANT:] Over the neighbor's house. [STATE'S ATTORNEY:] Why? Was there something you wanted to shoot there? [DEFENDANT:] No. [STATE'S ATTORNEY:] Then why point it over the neighbor's house? [DEFENDANT:] Because that's where it ended up when I swung around. [STATE'S ATTORNEY:] Well, I won't just end up in this chair. I'll go and sit there because I want to sit down here. . . . So why did the gun end up pointed over the neighbor's house in what you have to say? [DEFENDANT:] That's where it got to when the officers fired the weapon. [STATE'S ATTORNEY:] That's where it got to? [DEFENDANT:] Yeah. They fired the weapon. Where I happened to have been looking was over at the neighbor's house. I got out of the way and threw the gun out of the way."

Defendant's expert, Dr. Jack Farrar, a clinical psychologist, testified that defendant suffers with personality disorders which render him suicidal and incapable of discerning right from wrong when "he's under a high degree of stress. . . ." Dr. Farrar also testified that defendant's psychological disorders sometimes cause him to lose touch with reality; that defendant's actions on March 5, 1997, indicate that defendant (while contemplating suicide) was then experiencing such an episode, and that defendant's impaired condition during the alleged offense rendered him incapable of discerning right from wrong. Dr. Farrar opined that defendant was in a dazed condition at the time — "what psychologists call disassociate and not be aware of right or wrong or probably be aware of what's going on at all in the real world . . ." — and that defendant did not regain his composure until after commission of the charged offense, when Officer Thomason's gunfire "shook him back into reality."

This appeal followed entry of defendant's judgment of conviction and sentence. *Held*:

1. Defendant contends the trial court erred in failing to give his oral request to charge on insanity pursuant to OCGA § 17-7-131 (b)

(3).[1] We do not agree.

" 'An affirmative defense is a defense that admits the doing of the act charged but seeks to justify, excuse, or mitigate it. . . .' " *Brown v. State,* 267 Ga. 350 (2), 351 (478 SE2d 129). See OCGA § 16-1-3 (1). " 'Insanity is an affirmative defense which the defendant must prove by a preponderance of the evidence.' . . . *Brown v. State,* 250 Ga. 66 (295 SE2d 727) (1982)." *Harris v. State,* 256 Ga. 350, 354 (6), 355 (349 SE2d 374). See *Mosher v. State,* 268 Ga. 555, 559 (491 SE2d 348).[2] " '[A] plea of not guilty by reason of insanity is a plea of confession and avoidance — it admits the facts pleaded in the indictment, but avoids conviction because of the condition of insanity of the defendant at the time of the offense. (Cits.)' *Moses v. State,* 167 Ga. App. 556, 559 (307 SE2d 35) (1983)[, overruled on other grounds in *Nagel v. State,* 262 Ga. 888 (427 SE2d 490)]." *Awtrey v. State,* 175 Ga. App. 148, 151 (3) (332 SE2d 896).

In the case sub judice, defendant did not admit to committing any act which constitutes aggravated assault upon a peace officer. He therefore did not establish the evidentiary foundation for charging on the affirmative defense of insanity. See generally *Gooch v. State,* 259 Ga. 301, 302 (2) (379 SE2d 522), and *Williams v. State,* 237 Ga. 399, 400 (228 SE2d 806). "It is well settled that '(a) request to charge the jury must be legal, apt and precisely adjusted to some principle involved in the case and be authorized by the evidence.' *Hill v. State,* 259 Ga. 557, 558 (3) (b) (385 SE2d 404). A trial judge does not err in refusing to give a requested charge that, inter alia, is not adequately adjusted or tailored to the case or is not reasonably raised or authorized by the evidence. *Harris v. State,* 202 Ga. App. 618, 621 (4) (c) (414 SE2d 919)." *Gill v. State,* 229 Ga. App. 462, 464 (4), 465 (494 SE2d 259).

2. Defendant next contends the trial court erred in asking defendant's expert witness whether defendant committed aggravated assault. This enumeration presents nothing for review as defendant

---

[1] This Code subsection provides that "[i]n all cases in which the defense of insanity is interposed, the trial judge shall charge the jury, in addition to other appropriate charges, the following: (A) I charge you that should you find the defendant not guilty by reason of insanity at the time of the crime, the defendant will be committed to a state mental health facility until such time, if ever, that the court is satisfied that he or she should be released pursuant to law. (B) I charge you that should you find the defendant guilty but mentally ill at the time of the crime, the defendant will be given over to the Department of Corrections or the Department of Human Resources, as the mental condition of the defendant may warrant."

[2] See also *Leland v. Oregon,* 343 U. S. 790 (72 SC 1002, 96 LE 1302); *Patterson v. New York,* 432 U. S. 197 (97 SC 2319, 53 LE2d 281); *Spivey v. State,* 253 Ga. 187, 188 (2) (319 SE2d 420); *Grace v. Hopper,* 234 Ga. 669 (217 SE2d 267), cert. denied at 423 U. S. 1066; *Marlowe v. State,* 187 Ga. App. 255 (1) (370 SE2d 20); *Loumakis v. State,* 179 Ga. App. 294, 299 (9) (346 SE2d 373).

did not object when the trial court asked defendant's expert witness whether defendant committed aggravated assault. *Newton v. State,* 226 Ga. App. 501, 503 (3) (486 SE2d 715).

*Judgment affirmed. Blackburn and Eldridge, JJ., concur. Eldridge, J., also concurs specially.*

ELDRIDGE, Judge, concurring specially.

I concur completely in the majority opinion and write only to emphasize the factual basis upon which we have determined that Kelley did not, in fact, raise the affirmative defense of insanity.

"A person shall not be found guilty of a crime if, at the time of the act . . . the person did not have mental capacity to distinguish between right and wrong *in relation to such act*[.]" (Emphasis supplied.) OCGA § 16-3-2. However, in the face of defense evidence that an indicted act did not even occur, a defendant's mental state in relation to such non-existent act does not matter. Clearly, whether one knows if an indicted act was right or wrong is irrelevant if one did not commit the act. See generally *Clark v. State,* 245 Ga. 629 (266 SE2d 466) (1980). It is for this reason the affirmative defense of insanity requires the admission of the act in order to make relevant the defendant's mental state in relation to the act and in order to carry the burden of proof with regard thereto.

However, here, the defendant took the stand at trial and flatly denied — repeatedly — that he committed the indicted act of pointing a pistol at a police officer:

[Q:] Did you ever aim the gun at either officer?

[A:] I never aimed the gun at either officer. . . .

[Q:] And you pointed the gun at the policemen in the hopes they would shoot and kill you. True or False?

[A:] False. I never pointed the gun at the police officers.

[Q:] Where did you point the gun?

[A:] Over the neighbor's house. . . .

[Q:] Did you commit a crime back on March 5th?

[A:] Only against myself.

[Q:] What do you mean?

[A:] Well, I attempted to kill myself. I believe that's —

[Q:] Let me rephrase my question. Did you commit the crime of aggravated assault of police officer —

[A:] No, sir; I did not.

A review of Kelley's trial testimony shows that he was adamant that he had committed no crime; that he was holding the gun because he was suicidal; that the officers had shot at him for no reason; that when he realized that the police were shooting at him, he fell on the ground and threw the gun under a nearby car; and that it was the police officers who had mishandled the situation: "I think if they

would have handled it a little less coarsely this all would have been settled with no shots being fired at me or anybody."

Further, the defense called Dr. Jack Farrar, a clinical psychologist, who interviewed Kelley two weeks prior to trial. Dr. Farrar testified that at the time of the incident, Kelley did not know right from wrong. However, this testimony was directed only to Kelley's desire to kill himself. As to the *indicted act*, Dr. Farrar specifically testified that Kelley "was not at all doing anything aggressive toward the officers." When asked directly (and without objection) by the trial court whether Kelley committed the *act* of aggravated assault, i.e., pointing a pistol at the officers, the doctor replied, "I don't believe he did."[1]

In this case, the defense to the indicted act of pointing a pistol at a police officer was not insanity; it was a denial that the indicted act even occurred. Accordingly, as a defense, Kelley's mental state in relation to an act that he denied doing was irrelevant and thus was not the proper subject of a charge to the jury. *Gill v. State*, 229 Ga. App. 462, 465 (494 SE2d 259) (1997).

DECIDED NOVEMBER 9, 1998.

*Sharon S. Whitwell*, for appellant.

*William T. McBroom III, District Attorney, Daniel A. Hiatt, Assistant District Attorney*, for appellee.

---

[1] The other two witnesses called by the defense, Kelley's girlfriend and his mother, testified that Kelley was a "good man" who would never do the indicted act. "If you'd give him all the money in the world to pull a trigger he wouldn't have done it on anyone but himself."