## 35987. WILSON v. THE STATE.

HILL, Justice.

This is a death case. From the presentation of the evidence the jury was authorized to find the following: The defendant, Joseph Wilson, Jr., and the victim, George A. Knox, and the victim's girl friend, Patty Johnson, were involved one to another or all together in some sort of drug deal.

On the evening of February 23, 1979, the defendant told two witnesses that he was going to blow the victim away. At about 9:45 p.m. that night the defendant abducted the victim at gunpoint from Patty Johnson's house in Cobb County. The victim was in the house with Ms. Johnson and two of his friends when the defendant entered the house carrying a 12-gauge, sawed-off shotgun. He pointed the gun at the victim and said something to the effect that "You set me up" or "You put the heat on me." The victim denied the allegation. The two friends, David and Kenneth Burns, attempted to leave but the defendant pointed the shotgun at them. After being assured that these two knew nothing, the defendant permitted them to go. The defendant again pointed the shotgun at the victim and said, "Let's go." The victim attempted to take his jacket and a chain that he carried, allegedly for protection, but was told he wouldn't need them. The defendant and the victim left the house in the defendant's truck. The Burns brothers saw them come out of the house. Later that night the defendant talked with Ms. Johnson over the telephone and told her that the victim had been "taken care of." The defendant told her to get rid of the victim's jacket.

The victim's body was found the next morning in a field in Forsyth County. He had been shot by a 12-gauge shotgun blast between the eyes at close range. The evidence at the scene indicated that the body was found where the shooting occurred. A neighbor testified that she heard a shot at about 1 a.m. There were no other wounds on the body. The defendant was subsequently arrested,

indicted, tried, and based primarily upon the testimony of Patty Johnson, David and Kenneth Burns and the investigating officers, was convicted of the murder of George A. Knox, the kidnapping with bodily injury of George A. Knox, and possession of a firearm during the commission of a crime. He was sentenced to death for the murder based on the statutory aggravating circumstance found by the jury, kidnapping with bodily injury to the victim. He was also sentenced to life imprisonment for kidnapping with bodily injury and to five years for possession of the firearm.[1] The evidence was sufficient to convince a rational trier of fact of defendant's guilt beyond a reasonable doubt. Jackson v. Virginia, 443 U. S. 307 (99 SC 2781, 61 LE2d 560) (1979).

Prior to trial, the defendant filed a 12-paragraph "Motion for Discovery" stating that it was made under authority of Brady v. Maryland, 373 U. S. 83 (83 SC 1194, 10 LE2d 215) (1963), and other cited cases, and under authority of Code Ann. §§ 38-801, 38-802. This motion called for some items particularly (e.g., statement of Patty Johnson) and described some items generally (e.g., memoranda or reports of law enforcement officers from Forsyth, Cobb and Gwinnett Counties regarding the defendant and the case). The motion called for the production of these items at all pretrial hearings and at trial and asked that defense counsel be permitted to examine the documents or, if examination be denied, that the court conduct an in camera inspection of such documents and that counsel be permitted to examine exculpatory materials found by the court in the in camera inspection.[2]

On June 13, 1978, the defendant filed a notice to produce calling for production pursuant to Code Ann. §§ 38-801, 38-802 of eight categories of specifically described items (some of which were listed in the earlier "Motion for Discovery") at a pretrial hearing set for the following day. Following that hearing, the court entered an order requiring the state to submit much of the requested material to the defendant for examination and requiring the district attorney and Forsyth County sheriff to submit their files to the court for an in camera inspection looking for exculpatory materials. The trial

---

[1] At the guilt-innocence trial the defendant sought to establish that he was at home with his wife on the night of the murder. At the sentencing trial he admitted that Ms. Johnson had testified truthfully as to his taking the victim from her house and testified that the victim was abducted from him by two men after he and the victim left the Johnson home.

[2] For the reasons which appear below, we do not approve of the practice of combining in one motion items sought by notice to produce with items sought pursuant to Brady v. Maryland, supra.

judge conducted the in camera inspection and initialed in red ink the materials he reviewed.

After the defendant examined the statements of Patty Johnson and David and Kenneth Burns, the defendant filed another notice to produce seeking to require the state to produce copies of those statements at any pretrial hearing and at trial.

1. The defendant has enumerated three alleged errors on the guilt-innocence phase of the trial. Two of these enumerations, with subparts, deal with the production of documents. In substance defendant complains that the trial court erred (1) in failing to provide the defendant with exculpatory material found during the in camera inspection, (2) in failing to find that the statements of Patty Johnson and David and Kenneth Burns were exculpatory, (3) in failing to furnish copies of the statements of Patty Johnson and David and Kenneth Burns to defendant's counsel, and (4) in failing to make a record or inventory of the materials the court examined in camera or to require that they be deposited in the registry of the court, thereby depriving the defendant of the right of appellate review of the in camera inspection.[3]

In *Brown v. State,* 238 Ga. 98, 101 (231 SE2d 65) (1976), this court held that, pursuant to Code Ann. § 38-802, the notice to produce provisions of Code Ann. § 38-801 (g) are applicable in criminal cases. As was pointed out in *Brown,* 238 Ga. at 100, sections 38-801 and 38-802 of our Code are unrelated to disclosure of exculpatory materials pursuant to Brady v. Maryland, supra.

Notices to produce under Code Ann. § 38-801 (g) can be used in a criminal case "to compel production of books, writing or other documents or tangible things in the possession, custody or control" of the opposite party, the State (district attorney and investigating officers,)[4] for use at trial, or at a pretrial evidentiary hearing, where such books, etc., would be admissible and are needed for use as evidence on behalf of the defendant.[5] *Natson v. State,* 242 Ga. 618 (5) (250 SE2d 420) (1978). Such a notice to produce may be quashed or modified if it is unreasonable or oppressive. Code Ann. § 38-801 (b). A *notice to produce* cannot be used to enable defense counsel to

---

[3]This case was tried before enactment of the 1980 act providing for discovery of the defendant's confession or statements made in police custody and for discovery of scientific reports to be used by the state (e.g., crime lab reports, autopsy reports, blood alcohol test reports). Ga. L. 1980, p.—— (H.B. No. 672, Act No. 1333).

[4]A separate subpoena duces tecum directed to the investigating officers may be necessary. See *Booker v. State,* 242 Ga. 773 (1) (251 SE2d 518) (1979).

[5]A notice to produce in a criminal case under Code Ann. § 38-801(g) is not as all-inclusive as a request to produce discoverable evidence under our Civil Practice Act, Code Ann. §§ 81A-134 (a), 81A-126 (b).

examine, in advance of trial or evidentiary hearing, the contents of the district attorney's file. *Natson v. State,* supra. As was held in *Natson,* a notice to produce cannot be used in a criminal case to require the production of the district attorney's work product; reports, memoranda and documents in the files of law enforcement officers; addresses and telephone numbers of the state's witnesses; or the names and addresses of other persons with knowledge of the facts.[6] As was pointed out in *Stevens v. State,* 242 Ga. 34 (1) (247 SE2d 838) (1978), witness statements are not subject to notice to produce, although exculpatory witness statements are subject to disclosure under Brady v. Maryland, supra. Accord, *Hamby v. State,* 243 Ga. 339 (2) (253 SE2d 759) (1979); *Spain v. State,* 243 Ga. 15 (2) (252 SE2d 436) (1979).

Brady v. Maryland, supra, requires that, on motion for production of specific material, the defendant be furnished exculpatory information; i.e., information favorable to the defendant and material either to guilt or punishment.[7] Where a Brady motion is made and the prosecutor does not make the specified material available to defense counsel, the trial judge should make an in camera inspection of the material sought. *Payne v. State,* 233 Ga. 294, 296 (210 SE2d 775) (1974); *Fleming v. State,* 236 Ga. 434, 438 (224 SE2d 15) (1976); *Watts v. State,* 239 Ga. 725, 727 (238 SE2d 894) (1977). On motion by the defendant the material examined in camera should either be sealed and filed, *Durham v. State,* 239 Ga. 697 (3b) (238 SE2d 334) (1977); or an inventory or record of the examined material made, so as to permit appellate review, *Dickey v. State,* 240 Ga. 634, 637, fn. 1 (242 SE2d 55) (1978).[8] Once the material is sealed or inventoried by the trial court, the appellate court can, upon the defendant's showing cause, exercise its discretion and call for the examined material.

In the case before us the defendant moved that the examined materials be sealed and filed for appellate review and we have ordered that those materials which the trial judge examined in camera be sealed and transmitted to this court under certificate of the judge as to whether the file contains all the materials examined

---

[6]The names of the state's witnesses are obtainable under Code § 27-1403.

[7]The United States Supreme Court has held that a prosecutor is under a duty to furnish the defendant, *without request,* material which creates a reasonable doubt as to the defendant's guilt. United States v. Agurs, 427 U. S. 97 (96 SC 2392, 49 LE2d 342) (1976).

[8]As can be seen from the above discussion, the in camera inspection looking for possibly exculpatory material is one of the progeny of Brady v. Maryland, supra. A notice to produce does not result in an in camera inspection.

by him. The trial judge had initialed the materials he examined and he has certified that to the best of his knowledge and belief those materials he examined, excluding any admitted into evidence during the trial, have now been transmitted to this court, together with other materials later placed in the files. In addition, the trial judge's certificate is supported by affidavits of the prosecuting attorney and the investigating officer. Subpart four (4) of defendant's enumeration of error, above (failure to make a record of the examined materials so as to permit appellate review), has been rendered moot.[9]

We have examined the material furnished to us and find no exculpatory material, with one possible exception (not examined by the trial judge prior to trial). A Georgia Crime Information Center report reflects that one David Burns was convicted on four counts of dangerous drugs and bad check and was given three months probation and required to pay $36 in restitution. Such information was called for by defendant's motion for discovery. However, in view of the corroboration of witness David Burns' testimony by Kenneth Burns and Patty Johnson, as well as the subsequent corroboration of the testimony of Patty Johnson by the defendant, we find that this information was not material either to defendant's guilt or punishment. Brady v. Maryland, supra. Hence, subpart one (1) of defendant's enumeration of error, above, is not grounds for reversal.

Whether or not the statements of Patty Johnson and David and Kenneth Burns were exculpatory is immaterial; they were made available to the defendant. Thereafter it was not the responsibility of the court to determine if those statements were exculpatory. It was not error to refuse to make copies of those statements for defense counsel where counsel saw those statements in advance of trial and had them available for use at trial. Subparts two (2) and three (3) of defendant's enumeration of error, above, are not grounds for reversal.

2. In his final enumeration defendant asserts error in the admission of testimony by the investigating officer as to out-of-court conversations that he had with certain witnesses. The victim's driver's license and a payroll check were found on his body. Through the employer, an address for the victim was obtained. The house had burned. Patty Johnson, who lived next door, was interviewed to find out where the occupants of the burned house had moved. The officer

---

[9]*Owens v. State,* 233 Ga. 869 (214 SE2d 173) (1975), is not applicable here. That case involved the post trial recreation of testimony of potential jurors whereas this case involves the transmission of files containing written documents.

testified on direct examination that he learned from Patty Johnson the names of the people who had been living next door with the victim until the fire. Patty Johnson told the officer during this interview that she last saw the victim on the afternoon before the murder. He testified that he located and interviewed the former neighbors. At this point the defense objected to any testimony concerning conversations, but the trial court allowed the testimony to explain the officer's conduct of the investigation. See Code § 38-302. The officer said that information he received from the victim's former housemates led him back to Patty Johnson. The defendant asserts that after this information was given, it was error for the prosecutor to ask, "How did you determine that, or why did you go back to Patty Johnson's after talking with these people?" This question elicited testimony from the officer that he learned the name "Joey Wilson" from the victim's former housemates and information which indicated that Patty may have seen the victim later than she had admitted. This had led him back to Patty Johnson.

Defendant asserts that the state's purpose was to put before the jury the exact words of an out-of-court declaration and that the suspicion that Patty Johnson had misstated the time she last saw the victim was prejudicial. No exact words were repeated. The testimony of the officer merely showed why he returned to talk with Patty Johnson. Patty Johnson later testified that the victim had been at her house at about 9:45 p.m. on the evening in question. The former neighbors later testified that the defendant had told them he was going to blow the victim away. Any error in admitting the officer's testimony for the limited purpose of explaining his conduct was rendered utterly harmless by the subsequent admission of the testimony of the witnesses referred to by the officer. *Mooney v. State,* 243 Ga. 373 (5) (254 SE2d 337) (1979); *Arnold v. State,* 236 Ga. 534 (5) (224 SE2d 386) (1976).

3. *Sentence Review.* (A) Code Ann. § 27-2537 requires this court to determine "whether the sentence of death was imposed under the influence of passion, prejudice, or any other arbitrary factor." One prospective juror was stricken for cause under Witherspoon v. Illinois, 391 U. S. 510 (88 SC 1770, 20 LE2d 776) (1968). The transcript of voir dire shows that this juror was properly disqualified.

In his closing argument in the sentencing phase, the prosecutor began by addressing his remarks to the trial court with the jury present. He argued four points in favor of imposing the death penalty (retribution, deterrence, protection of society by removal, and rehabilitation). The prosecutor quoted Gregg v. Georgia, 428 U.

S. 153, 183-184 (96 SC 2909, 49 LE2d 859) (1976), on the retribution theory justifying the imposition of the death penalty. He argued the tendency of the defendant to escape, as evidenced by his past record, and noted that the Alday murderers were escapees. (See *Coleman v. State,* 237 Ga. 84, 96 (226 SE2d 911) (1976).) Regarding protection of society, he read to the trial court from *Eberhart v. State,* 47 Ga. 598, 610 (1873), attributing the remark to "a noted legal scholar of the 1800's." The prosecutor next addressed his remarks specifically to the jury, referring back to his earlier argument and also quoting the state's argument to the United States Supreme Court in Gregg v. Georgia, supra, in reference to deterrence and protection of society.

We have condemned the practice of quoting from *Eberhart v. State,* supra. *Hardy v. State,* 245 Ga. 272, 279 (264 SE2d 209) (1980); *Hawes v. State,* 240 Ga. 327, 335-336 (240 SE2d 833) (1977). The practice of quoting nevertheless has continued. Each case must be decided upon its own facts as to the question of passion, prejudice, etc. *Ruffin v. State,* 243 Ga. 95, 105 (252 SE2d 472) (1979). We will continue to review each case on that basis, giving particular scrutiny to quotations read in the presence of the jury. Reading the prosecutor's closing argument as a whole in this case we find that except for the extraneous and unnecessary reference to the Alday murders, he used the quotations referred to above in making a rational argument to the jury for imposition of the penalty of death, he did not make it appear that the judiciary approved imposition of the death penalty in this case, and we do not find that the sentence of death was imposed under the influence of passion, prejudice or other arbitrary factor.

(B) We must next consider whether the evidence supports the jury's finding of the statutory aggravating circumstance that the murder was committed while the offender was engaged in the capital felony of kidnapping with bodily injury. Code Ann. §§ 27-2537 (c) (2); 27-2534.1 (b) (2). There was no evidence of bodily injury to the victim other than the shot which caused his death. Although the defendant in this case received only a life sentence for the offense of kidnapping with bodily injury, where the victim of the kidnapping is killed kidnapping with bodily injury is a capital felony for purposes of our statutory aggravating circumstances. *Peek v. State,* 239 Ga. 422, 431-432 (238 SE2d 12) (1977). This court has held that kidnapping with bodily injury and murder are not included crimes as a matter of law or fact and that where a kidnap victim is murdered the aggravating circumstance of kidnapping with bodily injury is supported by the evidence. *Pryor v. State,* 238 Ga. 698, 701, 703 (234 SE2d 918) (1977); *Potts v. State,* 241 Ga. 67,

86-87 (243 SE2d 510) (1978); *Stephens v. Hopper*, 241 Ga. 596, 600 (247 SE2d 92) (1978). The evidence supports the jury's finding of kidnapping with bodily injury beyond a reasonable doubt (see the statement of the facts of this case, above).[10]

(C) In reviewing the sentence of death, we must determine whether the sentence of death is excessive or disproportionate to the penalty imposed in similar cases, considering both the crime and the defendant.

In reviewing the death penalty in this case, we have considered the cases appealed to this court since January 1, 1970, in which a death or life sentence was imposed for murder, and we find the similar cases listed in the appendix support affirmance of the death penalty for murder. The cases show that juries are not unwilling to impose the penalty of death for murder where the victim has been kidnapped and deliberately put to death.

The evidence shows that the defendant, carrying a shotgun, sought out the victim intending to kill him, that he transported the victim at gunpoint to a secluded spot at night, and that he deliberately murdered the victim by shooting him between the eyes with the shotgun at close range. The sentence of death imposed upon Joseph Wilson, Jr., is not excessive or disproportionate considering the crime and the defendant.

*Judgment affirmed. All the Justices concur.*

ARGUED APRIL 14, 1980 — DECIDED JUNE 10, 1980 — REHEARING DENIED JUNE 24, 1980.

*Vanderhoff & Jordan, Kenneth J. Vanderhoff, Jr., Lynwood D. Jordan, Jr.,* for appellant.

*Frank Mills, III, District Attorney, Arthur K. Bolton, Attorney General, William B. Hill, Jr., Assistant Attorney General,* for appellee.

APPENDIX.

*Pryor v. State,* 238 Ga. 698 (234 SE2d 918) (1976); *Morgan v.*

---

[10]Because the aggravating circumstance found by the jury was that the offense of murder was committed while the offender was engaged in the commission of another capital felony, kidnapping with bodily injury (a crime as to which the jury had found the defendant guilty), Code Ann. § 27-2534.1 (b) (2), the decision in Godfrey v. Georgia, 48 USLW 4541 (1980) is not involved here. As the United States Supreme Court noted in Godfrey, supra (opinion of the Court, fn. 2), ground (2) of Code Ann. § 27-2534.1 (b) is more specific and objectively measurable than ground (7).

*State,* 241 Ga. 485 (246 SE2d 198) (1978); *Westbrook v. State,* 242 Ga. 151 (249 SE2d 524) (1978); *Ruffin v. State,* 243 Ga. 95 (252 SE2d 472) (1979); *Hardy v. State,* 245 Ga. 272 (264 SE2d 209) (1980); *Dampier v. State,* 245 Ga. 427 (265 SE2d 565) (1980).