**William Boyd TUCKER,
Petitioner-Appellant,**

v.

**Walter D. ZANT, Respondent-Appellee.**

No. 83-8137.

United States Court of Appeals,
Eleventh Circuit.

Jan. 20, 1984.

Opinion on Rehearing and Rehearing En
Banc March 15, 1984.

Robert B. Remar, Eric G. Kocher, Atlanta, Ga., for petitioner-appellant.

Mary Beth Westmoreland, Wm. B. Hill, Jr., Asst. Attys. Gen., Atlanta, Ga., for respondent-appellee.

Before JOHNSON and HENDERSON, Circuit Judges, and ALLGOOD *, District Judge.

JOHNSON, Circuit Judge:

On March 9, 1978, the petitioner, William Boyd Tucker, was convicted in Muscogee County, Georgia, of murder, kidnapping with bodily injury, and robbery by intimidation. His convictions grew out of the August 21, 1977, robbery of a Majik Market convenience store and the abduction and stabbing death of a clerk, Kathleen Perry.[1] Tucker's jury sentenced him to death for the murder. On automatic appeal, the Georgia Supreme Court upheld both the convictions and the death sentence. *Tucker v. State,* 244 Ga. 721, 261 S.E.2d 635 (1979), *cert. denied,* 445 U.S. 972, 100 S.Ct. 1666, 64 L.Ed.2d 250 (1980). In August 1980, Tucker filed an application for state habeas corpus relief. The state habeas court conducted an evidentiary hearing and subsequently denied relief. The Supreme Court of Georgia denied Tucker's writ of probable cause to appeal. *Tucker v. Zant,* No. 1590 (April 22, 1981), *cert. denied,* 454 U.S. 1022, 102 S.Ct. 555, 70 L.Ed.2d 417 (1982).

Having exhausted all avenues of relief in the state courts, Tucker filed a habeas corpus petition in the United States District Court for the Middle District of Georgia, Macon Division, on January 28, 1982. On January 5, 1983, the court transferred the case to the Columbus Division. On January 26, 1983, the court denied Tucker's request for an evidentiary hearing and adopted a magistrate's report and recommendation denying relief. Tucker filed a notice of appeal on February 18, 1983.

Tucker's claims fall into six categories: (1) The prosecutor's misconduct denied him a fair sentencing hearing; (2) the trial court's charge to the jury in the sentencing phase of his trial was constitutionally infirm; (3) his counsel was ineffective both at trial and on direct appeal; (4) the Supreme Court of Georgia's review of his sentence was constitutionally inadequate; (5) the evidence at trial was insufficient to prove the presence of an aggravating factor beyond a reasonable doubt, and (6) the district court improperly denied him an evidentiary hearing. On the first issue, prosecutorial misconduct, we reverse the district court's holding and remand with instructions to grant the petitioner's request for resentencing. We affirm the district court on all other issues.

## I. PROSECUTORIAL MISCONDUCT

Tucker claims that the emotional nature of the prosecutor's argument to the jury at his sentencing hearing renders his death sentence invalid. We agree. In *Hance v. Zant,* 696 F.2d 940, 952 (11th Cir.1983), we announced the principle that a "dramatic appeal to gut emotion has no place in the courtroom, especially in a case involving the penalty of death. A sentence imposed after such an appeal cannot be carried out."[2] Before turning to the merits of Tucker's claim, we will attempt to dispel some confusion that has apparently surrounded our decision in *Hance.*[3]

 Georgia law permits the imposition of the death penalty only if the state is

---

* Honorable Clarence W. Allgood, U.S. District Judge for the Northern District of Alabama, sitting by designation.

1. A full discussion of the facts of the crime is contained in *Tucker v. State,* 244 Ga. 721, 261 S.E.2d 635, 637 (1979), *cert. denied,* 445 U.S. 972, 100 S.Ct. 1666, 64 L.Ed.2d 250 (1980). Those facts that are necessary for the determination of the issues before this Court we discuss below.

2. In *Hance,* 696 F.2d at 951, and in *Brooks v. Francis,* 716 F.2d 780 at 786 (11th Cir.1983), we indicated that a prosecutor's argument in the sentencing phase of a trial is held to a somewhat different standard than is his guilt-phase closing argument. Our discussion here applies only to sentencing.

3. *See Conner v. State,* 251 Ga. 113, 303 S.E.2d 266, 272–76 (1983). There the Supreme Court of Georgia misconstrued our decision in *Hance* to prohibit emotion as "an altogether improper factor in a death penalty case." *Id.* at 273, 303

able to prove, beyond a reasonable doubt, the existence of a statutory aggravating factor. O.C.G.A. § 17–10–30(c).[4] Even if the jury determines that an aggravating circumstance exists, it may opt to exercise mercy by returning a life sentence. O.C.G.A. § 17–10–30(b). A prosecutor may not attempt to inflame jurors faced with this awesome choice by playing on their passions, prejudices, and fears. *Hance,* 696 F.2d at 951; *Brooks v. Francis,* 716 F.2d 780 at 786 (11th Cir.1983). "This does not mean that prosecutors cannot be zealous, enthusiastic and determined." *Brooks,* at 790. In *Hance* this Court did not proscribe reasonable appeals to the jury's sense of outrage at the horror of the defendant's crime. The Supreme Court has confirmed that

> [i]n part, capital punishment is an expression of society's moral outrage at particu-

larly offensive conduct. This function may be unappealing to many, but it is essential in an ordered society that asks its citizens to rely on legal processes rather than self-help to vindicate their wrongs.

. . . . .

> . . . [T]he decision that capital punishment may be the appropriate sanction in extreme cases is an expression of the community's belief that certain crimes are themselves so grievous an affront to humanity that the only adequate response may be the penalty of death.

*Gregg v. Georgia,* 428 U.S. 153, 183–84, 96 S.Ct. 2909, 2929–30, 49 L.Ed.2d 859 (1976) (opinion of Stewart, Powell, and Stevens, JJ.) (footnotes omitted). At the same time, this retributive justification requires that capital punishment be imposed only on

---

S.E.2d 266. That court held that Georgia's statutory command, which we noted in *Hance,* that death sentences not be imposed "under the influence of passion, prejudice, or any other arbitrary factor," O.C.G.A. § 17–10–35(c)(1), "does not encompass all emotion, but only that engendered by prejudice, particularly racial prejudice, or other arbitrary factors." 303 S.E.2d at 275 (footnote omitted). Although our decision in *Hance* was based on the federal constitutional proscription against fundamental unfairness, not on the requirements of Georgia law, we agree with the Supreme Court of Georgia that *Hance* should be read only to prohibit emotional appeals directed at "arbitrary factors." However, we view this to mean that emotional appeals are impermissible if directed to any consideration other than "the circumstances of this particular offense." *Woodson v. North Carolina,* 428 U.S. 280, 304, 96 S.Ct. 2978, 2991, 49 L.Ed.2d 944 (1976) (opinion of Stewart, Powell, and Stevens, JJ.).

**4.** This section lists as aggravating factors the following:

> (1) The offense of murder, rape, armed robbery, or kidnapping was committed by a person with a prior record of conviction for a capital felony;
>
> (2) The offense of murder, rape, armed robbery, or kidnapping was committed while the offender was engaged in the commission of another capital felony or aggravated battery, or the offense of murder was committed while the offender was engaged in the commission of burglary or arson in the first degree;

> (3) The offender, by his act of murder, armed robbery, or kidnapping, knowingly created a great risk of death to more than one person in a public place by means of a weapon or device which would normally be hazardous to the lives of more than one person;
>
> (4) The offender committed the offense of murder for himself or another, for the purpose of receiving money or any other thing of monetary value;
>
> (5) The murder of a judicial officer, former judicial officer, district attorney or solicitor, or former district attorney or solicitor was committed during or because of the exercise of his official duties;
>
> (6) The offender caused or directed another to commit murder or committed murder as an agent or employee of another person;
>
> (7) The offense of murder, rape, armed robbery, or kidnapping was outrageously or wantonly vile, horrible, or inhuman in that it involved torture, depravity of mind, or an aggravated battery to the victim;
>
> (8) The offense of murder was committed against any peace officer, corrections employee, or fireman while engaged in the performance of his official duties;
>
> (9) The offense of murder was committed by a person in, or who has escaped from, the lawful custody of a peace officer or place of lawful confinement; or
>
> (10) The murder was committed for the purpose of avoiding, interfering with, or preventing a lawful arrest or custody in a place of lawful confinement, of himself or another.

Tucker's jury found the presence of the (b)(2) factor.

those who are deserving of society's ultimate sanction. *See Zant v. Stephens,* —— U.S. ——, ——, 103 S.Ct. 2733, 2743, 77 L.Ed.2d 235 (1983) (in order to avoid constitutional invalidation, aggravating factors must "reasonably justify the imposition of a more severe sentence on the defendant compared to others found guilty of murder"). Hence, the retributive nature of the capital sentence is reflected in the Supreme Court's frequently repeated concern that the death penalty not be applied in an arbitrary and capricious manner, *see, e.g., Furman v. Georgia,* 408 U.S. 238, 92 S.Ct. 2726, 33 L.Ed.2d 346 (1972); *Godfrey v. Georgia,* 446 U.S. 420, 427, 100 S.Ct. 1759, 1764, 64 L.Ed.2d 398 (1980), and that the sentencer's focus be on the individual offender and his crime. *Lockett v. Ohio,* 438 U.S. 586, 602–05, 98 S.Ct. 2954, 2963–65, 57 L.Ed.2d 973 (1978); *Woodson v. North Carolina,* 428 U.S. 280, 304, 96 S.Ct. 2978, 2991, 49 L.Ed.2d 944 (1976). The requirement that the sentencer consider any relevant mitigating circumstance, *see Eddings v. Oklahoma,* 455 U.S. 104, 110–12, 102 S.Ct. 869, 873–75, 71 L.Ed.2d 1 (1982); *Lockett v. Ohio, supra; Westbrook v. Zant,* 704 F.2d 1487, 1501 (11th Cir.1983), also flows from notions of retributive justice. The retributive justification for capital punishment requires that the sentencing decision turn in large part on considerations of the justice of imposing death on a given offender for committing a given crime. *See Zant v. Stephens,* —— U.S. at ——, 103 S.Ct. at 2743.

In Georgia's sentencing scheme the jury serves, in part, to gauge "society's moral outrage at particularly offensive conduct." *Gregg, supra.* Once the jury has found the presence of a statutory aggravating factor, it has discretion whether to impose the death penalty or to exercise mercy. This decision should turn on whether this defendant is deserving of mercy or whether his crime is "so grievous an affront to hu-

manity that the only adequate response may be the penalty of death." *Id.* The jury's choice will thus depend largely on its evaluation of the horribleness of the accused's crime,[5] and that evaluation is necessarily based on subjective and emotional factors.

Consequently, it is not constitutionally improper for a prosecutor to make arguments about the heinousness of the defendant's crime in emotional terms. The gravity of the crime is a crucial factor in the jury's decision, and arguments about the gravity of a murder will always be emotional. Mere recitation of the facts of some crimes is likely to stir the passions of reasonable persons. This Court's precedent states that even the most graphic description of a murder and characterization of the criminal are permissible if the evidence supports them. *Cronnon v. Alabama,* 587 F.2d 246, 251 (5th Cir.1979).[6]

 *Hance* did not prohibit prosecutors from arousing the emotions of the jury with statements that are supported by the evidence and relate to issues of an inherently emotional nature that are crucial to the jury's sentencing decision. Rather, *Hance* was an attempt to put prosecutors on notice that the Constitution will not permit arguments on issues extrinsic to the crime or the criminal aimed at inflaming the jury's passions, playing on its fears, or otherwise goading it into an emotional state more receptive to a call for imposition of death and "invit[ing] the jury to decide the life-death verdict in a frenzied and emotional atmosphere." *Brooks v. Francis,* at 789. A prosecutor's sentencing argument that appeals to the emotions of the jurors is not prohibited by *Hance* when it relates directly to "the circumstances of [the] particular offense," *Woodson v. North Carolina,* 428

---

5. We do not hold that this is the *only* issue relevant to the jury's sentencing decision, but merely that it is the only issue to which the jury's emotional response is relevant.

6. In *Bonner v. City of Prichard,* 661 F.2d 1206, 1209 (11th Cir.1981) (en banc), the Eleventh Circuit adopted as binding precedent the decisions of the Fifth Circuit rendered prior to October 1, 1981.

U.S. at 304, 96 S.Ct. at 2991, and is supported by the evidence.[7]

In Tucker's sentencing hearing the prosecutor violated this standard by making a number of statements bearing striking resemblance to those found objectionable in *Hance* and *Brooks*. He began by telling the jury

> I've been here a number of years in the District Attorney's Office and I've tried a number of cases, many cases as a matter of fact, and the death penalty is seldom requested in Columbus, it's very infrequently requested. And since I've been here, it's been requested as a matter of fact, in the five years I've been here, something less than a dozen times. It's not very often that we come in here and ask you to bring in a verdict of a death sentence on an individual.

In *Hance*, 696 F.2d at 951–52, we found a similar statement impermissible. Such arguments are objectionable because their effect is to assure the jurors that someone with greater experience has already made the decision that the law imposes on them. The statement invites the jury to rely on the prosecutor's office's conclusion that the defendant is deserving of death rather than to make its own evaluation of the enormity of the defendant's crime.

The prosecutor then offered his personal opinion of Tucker's prospects for rehabilitation with the following passioned appeal:

> Ladies and gentlemen, can you seriously believe that anybody who can do what he's done could be ever rehabilitated? That man rehabilitated? I'd move to Russia before I'd live next door to this man.... [C]ertainly this man is not a candidate for rehabilitation. Society cannot afford to give him the chance to do more damage to our citizens, to our young women.

Although a defendant's prospects for rehabilitation are a relevant topic for argument, a prosecutor may not discuss his own opinion of those prospects and may not do so in such emotional and bombastic terms. The prosecutor later attempted to intimidate the jurors by playing on their fears in a more explicit fashion.

> Ladies and gentlemen, I submit to you that this man is not the type of man you're going to want to take a chance on living. After the deeds he's done, after the deeds he's done, we cannot afford to give him the chance to do what he's done again.... [I]f he is executed, and if you bring in a verdict of guilty [sic], I'll sleep just as good, or I'll sleep better knowing that one of them won't be on the street. Knowing that one of them will be gone. It's not all of them, but it's better than none.

At the penalty phase of a murder trial, whether the convicted defendant will be "out on the street" or whether the prosecutor will "sleep better" if he is executed are not germane, and making such an argument serves only to arouse the generalized fears of the jurors and divert the focus of their attention from the character of this crime and this criminal. In a similar vein, this Court has held that "[i]t is ... improper [for a prosecutor] to discuss whether or not our jails are run properly, have adequate security, or allow for multiple escapes. Such is not an issue in the case at hand." *Brooks, supra*, at 789.

As in *Hance*, the prosecutor in this case made a plea for the safety of Tucker's fellow prisoners and his prison guards:

> [I]f he goes to the penitentiary with his propensity to do what he's done, others will be placed in jeopardy, because he'll be in there with other young prisoners. He'll be in with people who might be in there for car stealing, or Marijuana or something, kids and they'll be exposed to him, they'll get his influence. We know about his perverted sexual habits. Ladies and gentlemen, prisoners will be in there and they will be subjected to him. Do we want to put young people in his presence as it would be done in Reidsville or wherever he goes to the penitentiary. He

---

**7.** Even an emotional appeal that falls within this standard may be impermissible if it is un-

reasonably inflammatory. This case does not require us to explore this additional limitation.

could kill them. I submit to you, ladies and gentlemen, that we can't afford to have this man in our society.

Now, what about the guards who would be guarding him down there? The guards would be, of course, exposed to him.

"It is ... improper to urge the imposition of a sentence of death because of the dangers to other prisoners through exposure to this individual if confined together. Such is not an issue in this case. The same holds true as to the dangers to prison guards." *Brooks*, at 789–790.

▮▮▮ Finally, the prosecutor attempted improperly to influence the jurors by appealing to their pocketbooks. He pointed out that a life sentence would require "spending thousands and thousands of taxpayers' dollars to support him for the rest of his life." It is impermissible to invite a jury to put a man to death because of the financial cost of incarcerating him. Protection of the public fisc is not a proper justification for capital punishment.

▮▮▮ Viewed as a whole, the prosecutor's sentencing argument had the obvious effect of inciting the jurors' passions and diverting their attention to impermissible considerations. "A sentence of death imposed after such an appeal cannot be carried out. The sentencing hearing in this case was fundamentally unfair and therefore constitutionally intolerable." *Hance*, 696 F.2d at 953.[8]

## II. THE SENTENCING PHASE JURY CHARGE

▮▮▮ Tucker claims that the trial court committed several errors of constitutional dimension during the sentencing phase of the trial. First, Tucker contends that the court's charge that the jury "will *recommend* the death penalty ... or decline to *recommend* the death penalty," (emphasis

supplied) was error because it misled the jurors as to their role in sentencing and led them to treat their decision too lightly. The petitioner points out that a Georgia jury's death sentence is no mere "recommendation"; the trial court is required to impose the sentence that the jury returns. O.C.G.A. § 17–10–31.

The term "recommend" is borrowed from the Georgia death penalty statute, O.C.G.A. § 17–10–30(c), which the Supreme Court has held constitutional on its face. *Gregg v. Georgia*, 428 U.S. 153, 96 S.Ct. 2909, 49 L.Ed.2d 859 (1976). Aside from the sanction that *Gregg* lends to use of the Georgia code's terminology, a review of the record convinces us that the jury must have understood its role in deciding punishment. At the beginning of the sentencing proceeding the court told the jurors, "[t]he only issue for determination by the jury shall be the punishment to be imposed by you, the jury." During its charge the court instructed the jurors that their duty was "to determine within the limits prescribed by law the penalty that shall be imposed." The tone of the charge that followed emphasized the jury's role as ultimate sentencer. For example, the court instructed the jurors that "[i]f you find beyond a reasonable doubt that the offense of murder was committed while the offender was engaged in the commission of another capital felony ... you would be authorized but not required to impose the death penalty," and that if they found the presence of an aggravating circumstance "it is entirely within your discretion to impose either the death penalty or life imprisonment." Viewing, as we must, the court's instruction as a whole, *Antone v. Strickland*, 706 F.2d 1534, 1537 (11th Cir. 1983), in the context of the entire trial, *Hance, supra*, 696 F.2d at 953, we conclude that the trial court's reference to the jury's role as "recommending" punishment neither misled the jurors as to the effect of their

---

8. *Tucker also complains of another portion of the prosecutor's argument made during the sentencing phase of the trial. He complains that the statement made by the prosecutor to the jurors is objectionable because it attempts to assuage the jury's feeling of responsibility* over the decision whether to put the defendant to death. Since we have held in Section I of this opinion that the sentencing hearing in this case was fundamentally unfair, we do not reach or decide this additional objection relating to alleged prosecutorial misconduct.

choice nor "diminished the jury's sense of responsibility for its sentence." *Corn v. Zant*, 708 F.2d 549 at 557 (11th Cir.1983) (trial court's mention of mandatory appeal process not a due process violation).

Tucker also urges that the trial court did not adequately define mitigating factors and explain their function. In *Spivey v. Zant*, 661 F.2d 464, 467–72 (5th Cir. Unit B 1981), *cert. denied*, 458 U.S. 1111, 102 S.Ct. 3495, 73 L.Ed.2d 1374 (1982),[9] the Fifth Circuit held that jurors must receive instructions that adequately guide their consideration of mitigating factors.

> In most cases, this will mean that the judge must clearly and explicitly instruct the jury about mitigating circumstances and the option to recommend against death; in order to do so, the judge will normally tell the jury what a mitigating circumstance is and what its function is in the jury's sentencing deliberations.

*Id.* at 471 (footnote omitted). The Court stated that mitigating circumstances are those that "do not justify or excuse the offense, but which, in fairness or mercy, may be considered as extenuating or reducing the degree of moral culpability and punishment." *Id.* at 471 n. 8. In *Goodwin v. Balkcom*, 684 F.2d 794, 798–803 (11th Cir.1982), *cert. denied*, —— U.S. ——, 103 S.Ct. 1798, 76 L.Ed.2d 364 (1983), this Court held that the instruction that jurors were to hear "additional evidence in extenuation, mitigation, or aggravation of punishment" failed to meet *Spivey's* constitutional minimum because "[n]owhere does the charge even slightly hint about the option to impose life imprisonment even though aggravating circumstances are found." *Id.* at 802. Most recently, this Court held that the *Goodwin* instruction is insufficient even when coupled with an instruction that makes clear the jurors' ability to sentence the defendant to life imprisonment if they find an aggravating circumstance. *Westbrook v. Zant*, 704 F.2d 1487, 1503 (11th Cir.1983). "Although the charge authorized

the jury to consider circumstances in extenuation or mitigation ... the court failed to explain what function such a consideration would play in sentencing deliberations." *Id.* at 1503. Taken together, these cases require the trial court to (1) instruct the jury that it must consider mitigating evidence, (2) define mitigating factors and explain their function in sentencing deliberations, and (3) inform the jurors that a finding of aggravating circumstances does not require them to return a death sentence.

■ In its charge to the jury at the sentencing phase of Tucker's trial, the court began with the following instruction:

> You are authorized to consider all the facts and circumstances of the case. You will look to all the evidence in both phases of the trial, determine whether or not you find mitigating circumstances. If you do find them it will be your duty to consider them in arriving at your verdict. Now, mitigating circumstances are such as do not constitute a justification or excuse of the offense in question, but which in fairness and mercy may be considered as extenuating or reducing the degree of moral culpability.

After describing aggravating circumstances, the court told the jurors that

> [i]f you find such circumstances it is entirely within your discretion to impose either the death penalty or life imprisonment.... If you find that [an aggravating circumstance] exists, then it is your duty to consider all of the matters that I have called to your attention, and in your discretion to say whether or not the jury will recommend the death penalty.

Viewed as a whole, this charge clearly meets all the requirements of *Spivey, Goodwin,* and *Westbrook.* The trial court impressed upon the jury its duty to consider mitigating factors in fixing Tucker's sentence. The court defined and explained the function of mitigating factors in almost the exact words of *Spivey.* The court went further in explaining that the jury is to

---

**9.** Decisions rendered after October 1, 1981, by a Former Fifth Circuit Unit B panel or en banc court are binding on this Court. *Stein v. Reyn-* *olds Securities, Inc.*, 667 F.2d 33, 34 (11th Cir. 1982).

consider mitigating factors in exercising its discretion if it finds an aggravating factor exists. Finally, the court stated in the clearest terms the ability of the jury to recommend a life sentence even after it found the presence of aggravating circumstances. The instruction contained "adequate guidelines to lead a reasonable juror to fully comprehend the duties and choices involved in the sentencing procedure." *Corn v. Zant,* 708 F.2d at 562.

 But Tucker argues further that the trial court should have pointed out the specific mitigating factors, such as age and lack of prior criminal record, that the jury might have found applicable to him. Nothing in any of our cases suggests that such explicit enumeration of possible mitigating factors is required. On the contrary, *Spivey's* indication that a judge must "tell the jury what a mitigating circumstance is and what its function is," 661 F.2d at 471, contemplates a more general explanation. Moreover, a requirement that the trial court list specific mitigating factors would be inharmonious with the Supreme Court's admonitions that the sentencer be free to consider any relevant mitigating factor. *See Eddings v. Oklahoma,* 455 U.S. 104, 110–12, 102 S.Ct. 869, 873–875, 71 L.Ed.2d 1 (1982); *Lockett v. Ohio,* 438 U.S. 586, 602–05, 98 S.Ct. 2954, 2963–65, 57 L.Ed.2d 973 (1978). The sort of specificity Tucker requests would doubtless bring complaints from other petitioners that the trial court had unduly narrowed the focus of the jury's consideration. Defendant's counsel is, of course, free to direct the jury's attention to specific mitigating circumstances, but the Constitution does not oblige the trial court to do so.

 Finally, Tucker points out that, when the jury foreperson asked about the possibility of parole from a life sentence, the trial court simply refused to answer the question. Tucker urges that the court, once it knew that the jury was considering the possibility of parole, was constitutionally required to instruct the jurors to disregard parole in their deliberations. The trial court's refusal to discuss parole was based

on Georgia law, which prohibits the jury in any criminal case from being informed of the possibility of parole. O.C.G.A. § 17–8–76(a). In *California v. Ramos,* —— U.S. ——, 103 S.Ct. 3446, 77 L.Ed.2d 1171 (1983), the Supreme Court held that the Constitution does not prohibit notifying a capital sentencing jury of the power of the governor to commute a sentence of life without parole. We must conclude, therefore, that defendants in the sentencing phase of a capital murder trial have no federal right to prevent jury consideration of the possibility that they will be paroled if sentenced to life imprisonment. Consequently, the trial court's failure to instruct Tucker's jury to disregard that possibility could not have violated the Constitution.

## III. INEFFECTIVE ASSISTANCE OF COUNSEL

 Tucker claims that the performance of his trial attorneys, William Cain and Richard Smith, was so poor that it denied him the constitutionally guaranteed right to effective assistance of counsel. We begin our analysis of this contention with the now familiar litany of precedent setting out the standard for effective assistance. A vital corollary to the Sixth Amendment's guarantee to criminal defendants of the right to assistance of counsel is the requirement of *effective* assistance of counsel, "that is, counsel reasonably likely to render and rendering reasonably effective assistance given the totality of the circumstances." *Washington v. Strickland,* 693 F.2d 1243, 1250 (5th Cir. Unit B 1982) (en banc), *cert. granted,* —— U.S. ——, 103 S.Ct. 2451, 77 L.Ed.2d 1332 (1983). We measure counsel's performance not against the yardstick of hindsight but in the context of the circumstances as they appeared at the time. *Ford v. Strickland,* 696 F.2d 804, 820 (11th Cir.1983). A petitioner seeking to overturn his conviction on the basis of ineffective assistance of counsel must show, by a preponderance of the evidence, that his attorney failed to meet this minimum standard. *Washington v. Strickland,* 693 F.2d at 1250. In addition, the petitioner must demonstrate that his counsel's ineffectiveness

worked to his "actual and substantial detriment." *Id.* at 1262.[10]

> Whether counsel has rendered effective assistance is a mixed question of law and fact which requires the appellate court to independently apply legal principles to the district court's findings of basic common historical facts of the case.... Thus, while we must defer to the district court's finding as to what counsel did or did not do, absent a clearly erroneous determination, we independently evaluate whether counsel's representation satisfied the standards of the Sixth and Fourteenth Amendments.

*Foster v. Strickland,* 707 F.2d 1339, 1342 n. 2 (11th Cir.1983), *quoting Adams v. Balkcom,* 688 F.2d 734, 739 (11th Cir.1982) (citation omitted).

After a review of the trial record and the record of the petitioner's state habeas hearing we conclude that Cain's performance, although not errorless, was generally within the "range of competence demanded of attorneys in criminal cases." *McMann v. Richardson,* 397 U.S. 759, 771, 90 S.Ct. 1441, 1449, 25 L.Ed.2d 763 (1970). Moreover, even if Tucker's representation did fall below the constitutional minimum, he has failed to demonstrate that he suffered actual and substantial prejudice as a result.

▮▮▮▮ Tucker's initial contention is that Cain's pretrial investigation and preparation was inadequate. Tucker relies primarily on Cain's failure to demand a psychiatric examination, which Tucker alleges was necessary for an adequate investigation of a possible insanity defense. Investigation is essential to an effective defense. *Washington v. Watkins,* 655 F.2d 1346, 1355–56 (5th Cir. Unit A 1981), *cert. denied,* 456 U.S. 949, 102 S.Ct. 2021, 72 L.Ed.2d 474 (1982). If an attorney fails to conduct a reasonably substantial investigation into a plausible line of defense, that failure is justified only if based on a reasonable strategic choice bolstered by reasonable professional assumptions. *Washington v. Strickland,* 693 F.2d at 1254–55. Without deciding whether Cain's investigation of an insanity defense was reasonably substantial,[11] we reject Tucker's claim because he has failed to make any showing of actual and substantial detriment resulting from the failure of his attorney to obtain a psychiatric examination. The only psychiatric evidence that the petitioner proffers comes from a psychiatrist who did not examine Tucker. Based on information Tucker's counsel supplied him regarding the petitioner's history and the facts of the crime, the psychiatrist's affidavit concludes that "a psychiatric evaluation might well have revealed useful clinical information regarding the degree of depression which Mr. Tucker was experiencing and the relationship if any between the depression and his abuse of alcohol and drugs." This evidence falls

---

**10.** In *United States v. Decoster,* 624 F.2d 196, 208 (D.C.Cir.1979) (en banc), the District of Columbia Circuit set out a more stringent prejudice standard requiring a showing that counsel's error was likely to have altered the outcome of the trial. The Supreme Court has granted certiorari in *Washington,* —— U.S. ——, 103 S.Ct. 2451, 77 L.Ed.2d 1332 (1983), and it may settle the question of the prejudice standard to be applied in ineffective assistance cases. We find that Tucker's claim fails under either the standard of *Decoster* or the standard we announced in *Washington.*

**11.** We doubt whether the petitioner has demonstrated that Cain's failure to obtain a psychiatric examination constituted ineffective assistance. The issue would turn on a determination of whether his investigation of the plausible defense of insanity was reasonably substantial.

> The amount of pretrial investigation that is reasonable defies precise measurement. It will necessarily depend upon a variety of factors.... In making that determination, courts should not judge the reasonableness of counsel's efforts from the omniscient perspective of hindsight, but rather "from the perspective of counsel, taking into account all of the circumstances of the case, but only as those circumstances were known to him at the time in question."

*Washington v. Strickland,* 693 F.2d at 1251. Cain testified that he discussed the issue extensively with Tucker and his family and concluded that there was no basis on which an insanity defense could be made. In cases such as this where counsel conducts an investigation substantial enough to give him a reasonable basis for concluding that more in-depth inquiry will be in vain, his failure to continue investigating a line of defense is not unreasonable.

far short of the required showing of actual and substantial prejudice. First, the affidavit does not appear to claim that a psychiatric examination might have produced evidence supporting an *insanity* defense. Tucker's expert claims only that an examination might have shown that Tucker was depressed and might have revealed that his actions were the result of drug and alcohol abuse; neither of these showings would have been sufficient to establish a defense to murder under Georgia law.[12] More importantly, Tucker's evidence demonstrates no *actual* prejudice. At most it suggests evidence that counsel *might* have discovered. Such a showing of potential detriment does not meet the standard of prejudice we established in *Washington v. Strickland,* 693 F.2d at 1253, as a predicate to relief on an ineffectiveness of counsel claim.[13]

Tucker's contention that Cain was ineffective because he failed to prepare a defense to the kidnapping with bodily injury charge based on the lack of bodily injury rests on an incorrect interpretation of Georgia law. *See* Part V, *infra.* This line of defense was therefore not "plausible" and required no investigation.

■ Tucker also alleges that Cain committed a series of errors at trial which rendered his assistance ineffective. "Reference to the totality of circumstances implies that we look at counsel's overall performance rather than dissect his advocacy and second guess each individual action or inaction." *Stanley v. Zant,* 697 F.2d 955, 962 (11th Cir.1983). Pointing out counsel's individual errors is insufficient; defendants are not guaranteed error-free counsel. *Foster*

*v. Strickland, supra,* 707 F.2d at 1342; *Westbrook v. Zant, supra,* 704 F.2d at 1498; *Young v. Zant,* 677 F.2d 792, 798 (11th Cir.1982). Our review of the record indicates that Cain's performance at trial was within the "range of competence demanded of attorneys in criminal cases." *McMann v. Richardson,* 397 U.S. 759, 771, 90 S.Ct. 1441, 1449, 25 L.Ed.2d 763 (1970).

■ Few of the errors that Tucker alleges are worthy of specific mention. Even if these errors did render Cain's representation ineffective, Tucker could not demonstrate that they actually and substantially prejudiced him. The evidence that the state presented at trial was overwhelming: It included what amounted to a confession which Tucker delivered immediately after his arrest, eyewitnesses who placed him at the scene of abduction and the scene of the murder, and blood that was found on his clothes soon after the stabbing occurred. The police apprehended Tucker when he drove up to the murder scene within an hour of the killing, looking for his wallet. None of the errors that Tucker alleges substantially strengthened the state's case or weakened his defense. *See Washington v. Strickland,* 693 F.2d at 1262 ("even if the defense suffered actual and substantial disadvantage, the state may show in the context of *all* the evidence that it remains certain beyond a reasonable doubt that the outcome of the proceedings would not have been altered but for the ineffectiveness of counsel"). We conclude, therefore, that Tucker's Sixth Amendment claim is without merit.[14]

---

**12.** In Georgia, insanity is an excuse only where the accused did not have the mental capacity to distinguish between right and wrong or was suffering from a delusional compulsion which overpowered his will to resist committing the crime. *Clark v. State,* 245 Ga. 629, 266 S.E.2d 466, 469 (1980). "[V]oluntary intoxication is no excuse for a crime...." *Harris v. State,* 250 Ga. 889, 302 S.E.2d 104, 105 (1983). Cain's decision not to rely heavily on Tucker's intoxication as an exculpatory factor was based on his experience that "Muscogee County jurors are not very sympathetic to the question of alcohol and drugs when they relate to sexual murders."

**13.** The magistrate's recommended findings of fact, which the district court adopted, concluded that "[t]here is no evidence of insanity which would serve as a defense nor is there any indication that an evaluation would have enabled counsel to develop any mitigating factors in addition to those ... which were fully presented at trial."

**14.** Tucker also claims that he received ineffective assistance during his sentence review before the Supreme Court of Georgia because Cain did not apprise the court of those factors which mitigated against a penalty of death. No prejudice could have resulted from such an

## IV. SENTENCING REVIEW

Tucker contends that the Supreme Court of Georgia's review of his sentence was inadequate, that he was therefore denied due process, and that his sentence should be reversed. Georgia's capital sentencing law requires its supreme court to conduct an expedited review of every death sentence. O.C.G.A. § 17–10–35. In reviewing the sentence, the court must determine "[w]hether the sentence of death is excessive or disproportionate to the penalty imposed in similar cases, considering both the crime and the defendant." O.C.G.A. § 17–10–35(c)(3). The court is required to "include in its decision a reference to those similar cases which it took into consideration." O.C.G.A. § 17–10–35(e). Tucker claims that his crime is unlike those to which the state supreme court referred. He urges that the facts of his case are more similar to those in a number of cases in which the death penalty was not imposed.

 This Court recently faced a similar claim in *Moore v. Balkcom,* 716 F.2d 1511 at 1515–1518 (11th Cir.1983). There we held that

[a] federal habeas court should not undertake a review of the state supreme court's proportionality review and, in effect, "get out the record" to see if the state court's findings of fact, their conclusion based on a review of similar cases, was supported by the "evidence" in similar cases.

*Id.* at 1518. We therefore decline the petitioner's invitation to conduct a de novo review of the proportionality of his sentence. Instead, we review the defendant's history, his sentence, and his crime merely to see whether the imposition of death in this case "shocks the conscience." *Id.; Spinkellink v. Wainwright,* 578 F.2d 582, 606 n. 28 (5th Cir.1978), *cert. denied,* 440 U.S. 976, 99 S.Ct. 1548, 59 L.Ed.2d 796 (1979). We cannot conclude that imposition of the penalty of death for the kidnap and brutal murder of an innocent young woman shocks the conscience so as to invalidate the petitioner's death sentence.[15]

Tucker also claims that the process by which the Supreme Court of Georgia has conducted its proportionality review is unfair. He alleges that a defendant appealing a death sentence has no way of predicting which cases the state supreme court might compare to his case. Tucker contends that this procedure prevented him from arguing the dissimilarity of the cases that the supreme court used to affirm his death sentence and that the procedure therefore denied him due process. Assuming, without deciding, that Tucker has a constitutional right to an appellate proportionality review,[16] we conclude that he received adequate opportunity to argue the disproportionality of his sentence.

We must begin with the proposition that "[a]s a federal court reviewing a collateral attack on a state prosecution, we must give great deference to the Georgia Supreme

---

error because the supreme court clearly considered those mitigating factors. *See Tucker v. State,* 244 Ga. 721, 261 S.E.2d 635, 643 (Ga. 1979), *cert. denied,* 445 U.S. 972, 100 S.Ct. 1666, 64 L.Ed.2d 250 (1980).

**15.** We stress, to avoid confusion, that the extremely deferential standard by which we review the proportionality review of a state supreme court does not apply to review of whether the O.C.G.A. § 17–10–30(b)(7) aggravating factor ("murder ... was outrageously or wantonly vile, horrible, or inhuman in that it involved torture, depravity of mind, or an aggravated battery to the victim") was invoked arbitrarily or capriciously. *See Godfrey v. Georgia,* 446 U.S. 420, 100 S.Ct. 1759, 64 L.Ed.2d 398 (1980). The latter sort of review is designed to insure that state law has "channel[ed] the sen-

tencer's discretion by 'clear and objective standards' that provide 'specific and detailed guidance,' and that 'make rationally reviewable the process for imposing a sentence of death.'" *Id.* at 428, 100 S.Ct. at 1764 (footnotes omitted). Once clearly and objectively defined aggravating factors have adequately channeled the sentencer's discretion, that discretion is entitled to the deference we exercise here.

**16.** The existence and extent of such a right is in question. *See Moore v. Balkcom,* 716 F.2d 1511 at 1517 n. 3. In *Harris v. Pulley,* 692 F.2d 1189, 1196–97 (9th Cir.1982), the Ninth Circuit decided that proportionality review is constitutionally required. The Supreme Court has granted certiorari in that case. —— U.S. ——, 103 S.Ct. 1425, 75 L.Ed.2d 787 (1983).

Court's method of conducting its proportionality review." *Moore v. Balkcom, supra,* at 1517. The Supreme Court of the United States has explicitly approved the procedures by which Georgia law authorizes imposition of the death penalty and has made particular favorable mention of its provision for proportionality review. *Gregg v. Georgia,* 428 U.S. 153, 204–06, 96 S.Ct. 2909, 2939–40, 49 L.Ed.2d 859 (1976) (opinion of Stewart, Powell, and Stevens, JJ.); *id.* at 223–24, 96 S.Ct. at 2948 (opinion of White, J., joined by Burger, C.J., and Rehnquist, J., concurring). Given this background, Georgia's death penalty procedures come with a heavy presumption of validity.

■■■ Tucker is unable to rebut this presumption. The record shows that he had ample opportunity to argue to the state supreme court that his punishment was disproportionate to his crime. He was, for example, free to present to the court the cases he now claims are similar to his own in which the defendant received only a life sentence. He had at his disposal the state supreme court's sentencing review in scores of cases. If there was a proportionality argument to be made, Tucker had adequate materials with which to make it. His contention that the supreme court's procedures prevented him from asserting his disproportionality claim is without merit.[17]

## V. EVIDENCE SUPPORTING PRESENCE OF AN AGGRAVATING FACTOR

As explained above, Georgia law requires a sentencing jury to find, beyond a reasonable doubt, the existence of at least one statutorily specified aggravating factor before it may impose a sentence of death. O.C.G.A. § 17–10–30(c). Tucker's jury convicted him of two capital crimes, murder and kidnapping with bodily injury. It sentenced him to death only for murder. The aggravating circumstance it found was that Tucker committed murder "while ... engaged in the commission of another capital felony," O.C.G.A. § 17–10–30(b)(2), namely, kidnapping with bodily injury. Because simple kidnapping is not a capital felony, the jury was required to find, beyond a reasonable doubt, that Tucker committed the bodily injury aspect of kidnapping with bodily injury. Although framed in terms of sufficiency of the evidence, the issue here is really a legal one. Tucker contends that the evidence presented at trial showed that the only injuries to the victim were those causing death. He claims that he could not be convicted of both murder and kidnapping with bodily injury because the injuries required for the latter conviction must be separate from those that caused the victim to die.[18] Even if Tucker's view of the facts is correct, we find his argument without merit.

■■■ The selection and definition of aggravating factors is within the province of the states. The Supreme Court has recently pointed out that the major focus of the federal courts in reviewing state death penalty statutes "has been more with the *procedure* by which the State imposes the death sentence than with the substantive factors the State lays before the jury as a basis for imposing death." *California v. Ramos,* — U.S. —, —, 103 S.Ct. 3446, 3451, 77 L.Ed.2d 1171 (1983). In *Gregg v. Georgia,* 428 U.S. at 192, 96 S.Ct. at 2934 (opinion of Stewart, Powell, and Stevens, JJ.), three members of the court stated that "the problem [of channeling jury discretion] will be alleviated if the jury is given guidance regarding the factors about the crime and the defendant that the State, representing organized society, deems particularly relevant to the sentencing decision." Nevertheless, "[i]t would be erroneous to suggest ... that the Court has imposed no substantive limitations on the particular factors that a capital sentencing jury may consider in determining whether death is appropriate." *Ramos,* — U.S. at —, 103 S.Ct. at 3452. This Court may review a state's aggravating factors to determine whether they "genuinely narrow the class of persons eligible for the death penalty and ... reasonably justify the imposition of a more severe sentence on the defendant compared to others found guilty of murder." *Zant v. Stephens,* — U.S. —, —, 103 S.Ct. 2733, 2742–43, 77 L.Ed.2d 235 (1983). *See also Godfrey v. Georgia,* 446 U.S. 420, 100 S.Ct. 1759, 64

---

17. Tucker's contention that the sentence review violated due process because the state supreme court did not consider mitigating factors is also meritless. *See* note 14, *supra.*

18. Put another way, Tucker argues that kidnapping with bodily injury is a lesser included offense of murder so that Tucker could not be convicted of both offenses for the same crime.

L.Ed.2d 398 (1980). We may not, however, second guess a state court's interpretation of its own statute if that interpretation meets these constitutional requirements.

■ The Supreme Court of Georgia has held explicitly that a defendant may be convicted of both murder and kidnapping with bodily injury when the only injury is the one causing death. *Wilson v. State,* 246 Ga. 62, 268 S.E.2d 895 (1980), *cert. denied,* 449 U.S. 1103, 101 S.Ct. 901, 66 L.Ed.2d 830 (1981), involved a kidnap victim who was injured only by the gunshot wound that killed him. The supreme court held that "kidnapping with bodily injury and murder are not included crimes as a matter of law or fact and ... where a kidnap victim is murdered the aggravating circumstance of kidnapping with bodily injury is supported by the evidence." *Id.* 268 S.E.2d at 900. *See also Stephens v. Hopper,* 241 Ga. 596, 247 S.E.2d 92, 95 (1978); *Potts v. State,* 241 Ga. 67, 243 S.E.2d 510, 519 (1978); *Pryor v. State,* 238 Ga. 698, 234 S.E.2d 918, 923, *cert. denied,* 434 U.S. 935, 98 S.Ct. 422, 54 L.Ed.2d 294 (1977).[19] Under Georgia law, the jury's verdict on the kidnapping with bodily injury was amply supported by the evidence.

The "(b)(2)" aggravating circumstance thus interpreted does not violate the federal constitutional requirement that aggravating factors adequately channel the sentencing decision of the jury by genuinely narrowing the class of persons eligible for the death penalty and by reasonably justifying the imposition of a more severe sentence. *Stephens, supra,* —— U.S. at ——, 103 S.Ct. at 2742. The state supreme court's definition of kidnapping with bodily injury is not vague, and it serves to isolate a particularly heinous class of cases. Tucker's reference to *Godfrey v. Georgia,* 446 U.S. 420, 100 S.Ct. 1759, 64 L.Ed.2d 398 (1980), is unavailing. There a plurality of the Supreme Court was concerned with narrowing the "(b)(7)"[20] aggravating factor when it intimated that (b)(7) requires "evidence of serious physical abuse of the victim before death." *Id.* at 431, 100 S.Ct. at 1766. The plurality was attempting to lend substance to the (b)(7) limitation on jury discretion; it did *not* hold that such evidence was a prerequisite to every sentence of death. The (b)(2) aggravating factor, as interpreted by the Supreme Court of Georgia, contains none of the ambiguity that required a narrowing interpretation of (b)(7) in *Godfrey.* Tucker's claim as to the insufficiency of the evidence of an aggravating factor is without merit.[21]

## VI. THE DISTRICT COURT'S DENIAL OF AN EVIDENTIARY HEARING

■ Finally, Tucker urges that the district court erred in denying his request for an evidentiary hearing. In *Thomas v. Zant,* 697 F.2d 977, 986 (11th Cir.1983), we listed the factors to be considered in determining whether a federal habeas petitioner is entitled to an evidentiary hearing:

[A] federal habeas petitioner must make a showing of two elements in order to obtain an evidentiary hearing ...: first, that a fact pertaining to his federal constitutional claim was not adequately developed at the state court hearing and that the fact was "material" ...; second, that failure to develop that material fact at the state proceeding was not attributable to petitioner's inexcusable neglect or deliberate bypass.

---

**19.** Tucker points to *Patrick v. State,* 247 Ga. 168, 274 S.E.2d 570, 572 (1981), and *Hance v. State,* 245 Ga. 856, 268 S.E.2d 339, 345–46, *cert. denied,* 449 U.S. 1067, 101 S.Ct. 796, 66 L.Ed.2d 611 (1980), to show that Georgia law is at least ambiguous on this point. *Patrick* is inapposite because there the jury was never charged on the offense of kidnapping with bodily injury; it convicted the defendant only of simple kidnapping and murder. Because simple kidnapping is not a capital offense, the supreme court held that it cannot support the (b)(2) aggravating factor. Thus the *Patrick* court did not hold that the prosecution *could not* have proved an aggravating circumstance; rather the court concluded that due to a technical error the prosecution failed to do so. *Hance* is not germane because the aggravating factor at issue there was not (b)(2) but (b)(7). The court held that "aggravated battery" must consist of injury inflicted on the victim before death, but this has no relevance to the definition of kidnapping with bodily injury.

**20.** "The offense of murder ... was outrageously or wantonly vile, horrible, or inhuman in that it involved torture, depravity of mind, or aggravated battery to the victim." O.C.G.A. § 17–10–30(b)(7).

**21.** For the same reasons, we reject Tucker's claim that the trial court erred in failing to instruct the jury that kidnapping with bodily injury requires injuries other than those causing death.

This standard requires habeas petitioners to point to specific facts, development of which would be material to a particular claim. Tucker fails to do so. Other than claiming that he was generally "unable to present to the state court all the evidence necessary for a proper determination of his petition," Tucker suggests only two specific factual issues on which he was unable to present evidence. First, he claims that the district court denied his motion for discovery of case abstracts held by the Georgia Supreme Court and used in its sentence review procedure. This evidence would not be material because, as we hold above, the petitioner's ability to present cases to the court for it to consider in reviewing the proportionality of his death sentence is, as a matter of law, sufficient to meet the requirements of due process. The second fact that Tucker claims not to have been allowed to develop relates to the effectiveness of his counsel on direct appeal. Again, such facts could not be material because of our conclusion that any ineffectiveness of the petitioner's appellate counsel was not prejudicial. *See supra*, note 14.

For the foregoing reasons, we RE-VERSE the district court's decision on the issue of prosecutorial misconduct and RE-MAND with instructions that the district court grant the petitioner's request for a resentencing proceeding.

---

ON PETITION FOR REHEARING AND PETITION FOR REHEARING EN BANC

Before GODBOLD, Chief Judge, RO-NEY, TJOFLAT, HILL, FAY, VANCE, KRAVITCH, JOHNSON, HENDERSON, HATCHETT, ANDERSON and CLARK, Circuit Judges.

BY THE COURT:

A member of this Court in active service having requested a poll on the application for rehearing en banc and a majority of the judges in this Court in active service having voted in favor of granting a rehearing en banc,

IT IS ORDERED that the cause shall be reheard by this Court en banc *with* oral argument on a date hereafter to be fixed.

The Clerk will specify a briefing schedule for the filing of en banc briefs.